1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  SCOTT C. MATHER, State Bar No. 190912
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5709
    Fax:  (415) 703-5843
8   Email:  Scott.Mather@doj.ca.gov

9  Attorneys for Respondent Ben Curry

10

11            IN THE UNITED STATES DISTRICT COURT

12         FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14

|  |  |
|---|---|
| **JOSE LUIS FLORES,** | C07-4846 JSW |
| Petitioner, | |
| v. | |
| **BEN CURRY, WARDEN,** | |
| Respondent. | Judge:    The Honorable Jeffrey S. White |

15

16

17

18

19

20  **ANSWER TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES**

21

22

23

24

25

26

27

28

Answer to OSC; Mem. of P. & A.

*Flores v. Curry*
C07-4846 JSW

# TABLE OF CONTENTS

Page

INTRODUCTION                                                                1

ANSWER TO THE ORDER TO SHOW CAUSE                                           2

MEMORANDUM OF POINTS AND AUTHORITIES                                        7

ARGUMENT                                                                    7

THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS
CLAIM WAS NOT CONTRARY TO OR AN UNREASONABLE
APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW,
NOR BASED ON AN UNREASONABLE DETERMINATION
OF THE FACTS.                                                               7

A.  The State Superior Court Decision Was Not Contrary to or an
    Unreasonable Interpretation of Clearly Established Federal Law.         8

    1.  Petitioner received all process due under the only United States
        Supreme Court law addressing due process in the parole
        context.                                                            9

    2.  The Ninth Circuit's some-evidence test is not clearly
        established Supreme Court law.                                      10

    3.  Even if the some-evidence standard was clearly established
        federal law, the standard was correctly applied by the state
        courts.                                                            12

    4.  The Board may rely on static factors to deny parole.              13

B.  The State Court Decision Upholding the Board's Parole Denial Was
    Based On a Reasonable Interpretation of the Facts.                     15

CONCLUSION                                                                 17

1

**TABLE OF AUTHORITIES**

2

**Page**

3  **Cases**

4  *Bd. of Pardons v. Allen*
   482 U.S. 369 (1987)                                                5
5
   *Benny v. U.S. Parole Comm'n*
6  295 F.3d 977 (9th Cir. 2002)                                       7

7  *Biggs v. Terhune*
   334 F.3d 910 (9th Cir. 2003)                              6, 12, 14-16
8
   *Carey v. Musladin*
9  __ U.S. __, 127 S. Ct. 649 (2006)                           6, 10, 11

10 *Crater v. Galaza*
   491 F.3d 1119 (9th Cir. 2007)                                     11
11
   *Foote v. Del Papa*
12 492 F.3d 1026 (9th Cir. 2007)                                     11

13 *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*
   442 U.S. 1 (1979)                                          5, *passim*
14
   *Hayward v. Marshall*
15 512 F.3d 536 (9th Cir. 2008)                                      15

16 *In re Dannenberg*
   34 Cal. 4th 1061 (2005)                                        5, 14
17
   *In re Rosenkrantz*
18 29 Cal. 4th 616 (2002)                                           6, 7

19 *Irons v. Carey*
   505 F.3d 846 (9th Cir. 2007)                                  12, 15
20
   *Jancsek v. Oregon Board of Parole*
21 833 F.2d 1389 (9th Cir. 1987)                                  10-12

22 *Juan H. v. Allen*
   408 F.3d 1262 (9th Cir. 2005)                                     15
23
   *Lockyer v. Andrade*
24 583 U.S. 63 (2003)                                             8, 17

25 *Machado v. Kane*
   No. C 05-01632 WHA, 2006 WL 449146 (N.D. Cal. Feb. 22, 2006)       16
26
   *McQuillion v. Duncan*
27 306 F.3d 895 (9th Cir. 2002)                                   10-12

28

# TABLE OF AUTHORITIES  (continued)

|  | Page |
|---|---|
| *Miller-El v. Cockrell*<br>537 U.S. 322 (2003) | 8, 12 |
| *Miller-El v. Dretke*<br>545 U.S. 231 (2005) | 8 |
| *Nguyen v. Garcia*<br>477 F.3d 716 (9th Cir. 2007) | 11 |
| *Sandin v. Connor*<br>515 U.S. 472 (1995) | 5 |
| *Sass v. California Board of Prison Terms*<br>461 F.3d 1123 (9th Cir. 2006) | 5, 12, 13, 15 |
| *Schriro v. Landrigan*<br>___U.S.___, 127 S. Ct. 1933 (2007) | 11 |
| *Superintendent v. Hill*<br>472 U.S. 445 (1985) | 6, 9, 10, 13, 16 |
| *Wainwright v. Greenfield*<br>474 U.S. 284 (1986) | 11 |
| *Wilkinson v. Austin*<br>545 U.S. 2384 (2005) | 10 |
| *Williams (Terry) v. Taylor*<br>529 U.S. 362 (2000) | 8 |
| *Ylst v. Nunnemaker*<br>501 U.S. 797 (1991) | 8 |

**Statutes**

| United States Code, Title 28 | |
|---|---|
| § 2254(d) | 6 |
| § 2254(d)(1-2) | 7, 11, 15, 17 |
| § 2254(e) | 7 |
| § 2254(e)(1) | 8, 15 |

| California Code of Regulations, Title 15 | |
|---|---|
| § 2281 | 16 |
| § 2402(c)(1) | 14 |

| California Penal Code | |
|---|---|
| § 3041(b) | 16 |
| § 3401 | 14 |

Answer to OSC; Mem. of P. & A.

*Flores v. Curry*
C07-4846 JSW

EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
JULIE L. GARLAND
Senior Assistant Attorney General
ANYA M. BINSACCA
Supervising Deputy Attorney General
SCOTT C. MATHER, State Bar No. 190912
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5709
 Fax:  (415) 703-5843
 Email:  Scott.Mather@doj.ca.gov

Attorneys for Respondent Ben Curry

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **JOSE LUIS FLORES,** | C07-4846 JSW |
| Petitioner, | **ANSWER TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| **v.** | |
| **BEN CURRY, WARDEN,** | |
| Respondent. | Judge:    The Honorable Jeffrey S. White |

## INTRODUCTION

Petitioner Jose Luis Flores is a California state inmate at the Correctional Training Facility, proceeding pro se in this habeas corpus action. Petitioner, currently serving a prison term of seven years to life plus four years for kidnaping for ransom and lesser related offenses, alleges that the Board of Parole Hearings unconstitutionally denied him parole at his 2006 parole consideration hearing. Specifically, Petitioner claims that the Board's decision is not supported by sufficient evidence. On January 30, 2008, this Court issued an Order to Show Cause. Respondent Warden Ben Curry answers as follows:

**ANSWER TO THE ORDER TO SHOW CAUSE**

In response to the Petition for Writ of Habeas Corpus, Respondent admits, denies, and alleges the following:

1.    Petitioner is in the lawful custody of the California Department of Corrections and Rehabilitation following his November 19, 1993 convictions of kidnaping, kidnaping for ransom, conspiracy to commit kidnaping for ransom, and felon in possession of a firearm.  (Ex. A, Abstracts of Judgment; Ex. B, Parole Hearing Transcript, at 1.)  He is currently serving an indeterminate sentence of seven years to life plus four years.  (Ex. B at 1.)  Petitioner does not challenge his underlying conviction or sentence in the current proceeding.  Rather, he alleges that the Board unlawfully denied him parole at his June 2006 parole consideration hearing.  (*See generally* Pet.)

2.    Petitioner's offense occurred on April 13, 1993, at approximately 4:50 p.m., when Angelica Leticia Gonzales (Leticia) went to the home of the victim, eighty-eight-year-old Maria Isordia, and subsequently left.  Moments later, three armed men entered the home.  One of the men put a gun to Maria's head and forced her to leave.  The men also placed a substance over Maria's mouth that caused to feel sleepy and nauseated.  In addition, the men placed another unknown substance on her mouth and told her to keep quiet.  Witnesses observed one of the men pointing a gun at Maria while another man and Ms. Gonzales drug Maria over to a car and forced her to lie in the car's backseat.  Maria was screaming while being drug to the car and then attempted to jump out of the car as it began moving, but was stopped by one of the men inside the car.

For the next eight days Maria was moved around to several locations in Los Angeles and Tijuana, Mexico.  Due to the effect of the substance that had been placed over her mouth, Maria was unable to eat any food for several days.  The men told Maria she was being taken to Tijuana to sign papers selling her house.

On April 13, 1993, the victim's son, Marcos Isordia, reported to police that he had received a telephone call from the kidnappers requesting $150,000 as ransom for his mother.  Marcos was told that if he wanted to see his mother alive, half the money would have to paid within a day and

Answer to OSC; Mem. of P. & A.

*Flores v. Curry*
C07-4846 JSW

2

1  the other half by the following day.  Approximately ten minutes later, Cecilio Decastro, Leticia's

2  Gonzales's brother, called Marcos and told him that the kidnappers had Maria and her four

3  children.  Cecilio told Marcos that these people were not playing around and that he should give

4  them the money they demanded.  As Marcos continued to negotiate with the kidnappers in the

5  subsequent days the negotiations began to intensify as the kidnappers threatened to cut off .

6  Maria's ear or kill her if their demands were not met.  As Marcos later told police, the kidnaping

7  may have arisen from his prior association with Leticia Angelica in which they had conspired

8  together in a stolen vehicle "rip-off," after which petitioner had kept and spent Leticia's portion

9  of the money.

10       On April 19, 1993, Petitioner entered the United States from Mexico.  The vehicle he was

11  riding was directed to a secondary inspection, where officials found a loaded and cocked .25

12  millimeter semiautomatic handgun under the driver's front seat.  Petitioner was arrested after a

13  background check revealed a prior felony and an outstanding felony warrant.

14       On April 20, 1993, Marcos assisted law enforcement officials by agreeing to meet with the

15  kidnappers to pay the ransom.  When three men arrived to meet Marcos, they were promptly

16  arrested.  Law enforcement officials located a fully loaded SKS semiautomatic rifle hidden in the

17  back seat of one of the kidnapper's cars.  Petitioner was thereafter implicated in this matter, but

18  he declined to make a statement from the county jail were he was being retained following his

19  arrest.

20       On April 21, 1993, three kidnappers entered Maria's room and told her she could leave after

21  giving them a five minute head start and her promise not to later identify them.  A sheriff's

22  detective subsequently received a call from Marcos, stating that his mother was safe and in good

23  condition.  As to the selection of Marcos's mother as the kidnaping victim, one of three

24  kidnappers arrested on April 20 stated that Petitioner had come up with the kidnaping plan to get

25  the money back that Marcos had kept from Leticia, and that Petitioner and Leticia had been in

26  charge of the operation.  (Ex. B at 11-20, 34-37; Ex. C, Probation Officer's Report, at 2-9; Ex. D,

27  Dec. 2005 Life Prisoner Evaluation Report, at 1-4.)

28       3.   On June 15, 2006, Petitioner appeared before the Board for a subsequent parole

1  consideration hearing.  At the conclusion of the hearing, the Board found Petitioner unsuitable

2  for parole, stating that his release would pose an "unreasonable risk of danger to society or a

3  threat to public safety."  The Board's decision was based in part on the gravity of Petitioner's

4  commitment offense.  The Board found that Petitioner's offense was carried out in a manner that

5  was "especially cruel" to the eighty-eight-year-old victim and was also "dispassionate and

6  calculated" given the planning for the offense and the number of days the victim was held.  In

7  addition, the Board found that the motive—solely financial gain—also weighed against parole.

8  (Ex. B at 44-45.)  The Board also denied parole in part due to Petitioner's lack of verified parole

9  plans, which it encouraged Petitioner to rectify before his next parole consideration hearing.  (*Id.*

10  at 46-50.)  Finally, the Board considered the San Diego County District Attorney's opposition to

11  parole.  (*Id.* at 47.  *See also* ex. B at 38-39 [Deputy District Attorney's statement]; ex. E, District

12  Attorney's June 2, 2006 letter opposing parole.)

13      4.    Before filing his federal petition, Petitioner sought relief in the state courts, generally

14  raising the same claims raised in his federal petition.  Petitioner initially filed a habeas corpus

15  petition in the San Diego County Superior Court, which was denied in a reasoned decision issued

16  on February 6, 2007.  (Ex. F, Super. Ct. Pet.; Ex. G, Super. Ct. Order.)

17      5.    Petitioner then filed a petition for habeas corpus in the California Court of Appeal,

18  generally raising the same claims as in his federal petition.  (Ex. H, Cal. Ct. Appeal Pet.)  In a

19  reasoned decision filed on May 29, 2007, the court denied his petition, rejecting Petitioner's

20  claim that based on the declaration he had submitted to the Board stating that he was not

21  involved in the initial planning of the kidnaping nor the actual kidnaping of the victim (see Pet.,

22  ex. 2), the Board should not have denied him parole based in part on the commitment offense.

23  Instead, the court held that the Board's finding that Petitioner's offense was committed in an

24  "especially cruel" manner lasting for "a number of days" was supported by the evidence

25  indicating that Petitioner and the other kidnapers had held the victim for ransom.  In addition, the

26  court also referenced the evidence indicating that Petitioner used a loaded weapon during this

27  offense, noting that "he was armed in the presence of the victim" and that he "threatened to harm

28  the victim if the ransom was not paid."  The court also found that the Board properly relied on

Answer to OSC; Mem. of P. & A.                                    *Flores v. Curry*
                                                                  C07-4846 JSW

the motive of the crime, which was solely "some economic gain." Finally, the court upheld the

Board's findings regarding Petitioner's lack of verified "plans for his future, including living

arrangements, employment plans and support plans." Accordingly, the court upheld the Board's

decision denying parole on the ground that it was supported by some evidence. (Ex. I, Cal. Ct.

Appeal Opn.)

6.    Petitioner then filed a petition for review in the California Supreme Court, generally

raising the same claims as in his federal petition. (Ex. J, Cal. Sup. Ct. Pet.) The court summarily

denied the petition on August 15, 2007.  (Ex. K, Cal. Sup. Ct. Order.)

7.    Based on the orders issued in his state court proceedings, Petitioner appears to have

exhausted his cognizable claims in the instant petition.  Respondent does not admit Petitioner has

exhausted his claims to the extent they are more broadly interpreted to encompass any systematic

issues beyond this particular parole consideration hearing.

8.    Respondent denies that Petitioner has shown that the state court's denial of habeas

corpus was contrary to, or involved an unreasonable application of, clearly established Supreme

Court law, or that the denial was based on an unreasonable determination of facts in light of the

evidence presented.  Petitioner therefore fails to make a case for relief under the Antiterrorism

and Effective Death Penalty Act of 1996 (AEDPA).

9.    Respondent denies that Petitioner has a federally protected liberty interest in parole;

hence, Petitioner fails to assert a basis for federal jurisdiction. *Greenholtz v. Inmates of Neb.*

*Penal & Corr. Complex*, 442 U.S. 1 (1979); *Bd. of Pardons v. Allen*, 482 U.S. 369, 374 (1987)

(no federal liberty interest without an expectation of early release); *In re Dannenberg*, 34 Cal. 4th

1061, 1087 (no expectation of early release in California); *Sandin v. Connor*, 515 U.S. 472, 484

(1995) (federally protected liberty interest arises only in connection with conditions of

confinement that impose a significant or atypical hardship).  Respondent acknowledges that the

Ninth Circuit came to the opposite conclusion in *Sass v. California Board of Prison Terms*, 461

F.3d 1123 (9th Cir. 2006), but preserves the argument.

10.    Respondent affirmatively alleges that even if Petitioner has a federally protected liberty

interest in parole, Petitioner had an opportunity to appear for his June 2006 hearing and the

Answer to OSC; Mem. of P. & A.                                                    *Flores v. Curry*
                                                                                  C07-4846 JSW

1  Board provided him with a detailed explanation as to why he was denied parole. (Ex. B at 44-

2  51.) Hence, Petitioner received all the process due under *Greenholtz*, the only clearly established

3  Supreme Court law regarding the due process rights of inmates at parole consideration hearings.

4    11.   Respondent affirmatively alleges that there is no United States Supreme Court decision

5  requiring a state parole decision to be supported by some evidence. *See Carey v. Musladin*, __

6  U.S. __, 127 S. Ct. 649, 654 (2006) (holding that the absence of Supreme Court law on a

7  particular issue precludes habeas relief under AEDPA). Thus, Petitioner's challenge to the

8  sufficiency of the evidence supporting the Board's decision fails to raise a cognizable due

9  process claim for relief under clearly established Supreme Court law, as required by AEDPA.

10   12.   If an evidentiary standard of review applies, Respondent denies that the state court

11  unreasonably determined that it is the some-evidence standard. Respondent denies that the

12  preponderance-of-the-evidence standard, and not the some-evidence standard, is the appropriate

13  standard of review. *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *Biggs v. Terhune*, 334

14  F.3d 910, 915 (9th Cir. 2003); *see Greenholtz*, 442 U.S. at 15 (finding that the executive

15  decisionmaker need not specify the evidence relied on when denying parole); *Rosenkrantz*, 29

16  Cal. 4th at 658, 665 (adopting the some-evidence test and distinguishing it from "considering

17  whether substantial evidence supports the findings underlying a gubernatorial decision").

18   13.   Respondent affirmatively alleges that the state court reasonably determined that the

19  Board's 2006 decision denying Petitioner parole was supported by some evidence.

20   14.   Respondent denies that the Board was precluded from considering the unchanging

21  circumstances of Petitioner's commitment offense as one of the grounds for denying him parole.

22   15.   Respondent denies that the state court unreasonably rejected Petitioner's claim that the

23  evidence in favor of parole mandated that the Board find Petitioner suitable for parole or that the

24  Board did not afford sufficient weight to the evidence in favor of parole.

25   16.   Respondent denies that the Board's decision denying parole violated Petitioner's

26  federal due process rights.

27   17.   Respondent affirmatively alleges that Petitioner fails to state or establish any grounds

28  for federal habeas corpus relief. 28 U.S.C. § 2254(d).

Answer to OSC; Mem. of P. & A.

*Flores v. Curry*
C07-4846 JSW

6

1     18.  Respondent affirmatively alleges that if the Petition is granted, Petitioner's remedy is

2  limited to a new parole consideration hearing before the Board that comports with due process.

3  *Benny v. U.S. Parole Comm'n,* 295 F.3d 977, 984-85 (9th Cir. 2002) (finding that the Board must

4  exercise the discretion in determining whether or not an inmate is suitable for parole); *In re*

5  *Rosenkrantz,* 29 Cal. 4th 616, 658 (2002) (finding that the proper remedy if a Board decision

6  lacks some evidence is a new hearing that comports with due process).

7     19.  Respondent does not allege that there is any procedural bar to this action, including

8  statute of limitations or non-retroactivity.

9     20.  Respondent denies that an evidentiary hearing is necessary in this matter. 28 U.S.C. §

10  2254(e).

11     21.  Except as expressly admitted above, Respondent denies, generally and

12  specifically, each and every allegation of the Petition, and specifically denies that Petitioner's

13  administrative, statutory, or constitutional rights have been violated in any way.

14     For the reasons stated in this Answer and in the following Memorandum of Points and

15  Authorities, this Court should deny the Petition.

16  **MEMORANDUM OF POINTS AND AUTHORITIES**

17  **ARGUMENT**

18  **THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS**
      **CLAIM WAS NOT CONTRARY TO OR AN UNREASONABLE**

19  **APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW,**
      **NOR BASED ON AN UNREASONABLE DETERMINATION**

20  **OF THE FACTS.**

21     Under AEDPA, when a state inmate's claim has been adjudicated on the merits in state

22  court, a federal court may grant a writ of habeas corpus on the same claim only if the state court's

23  adjudication was either (1) "contrary to, or involved an unreasonable application of, clearly

24  established Federal law, as determined by the Supreme Court of the United States;" or (2) "based

25  on an unreasonable determination of the facts in light of the evidence presented at the State Court

26  proceeding." 28 U.S.C. § 2254(d)(1-2).

27     "Clearly established federal law, as determined by the Supreme Court of the United States,"

28  refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time

Answer to OSC; Mem. of P. & A.                                        *Flores v. Curry*
                                                                  C07-4846 JSW

1   of the relevant state-court decision." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412 (2000). A

2   state court decision is contrary to established federal law if "the state court applies a rule that

3   contradicts the governing law set forth in [United States Supreme Court] cases," or "the state

4   court confronts a set of facts that are materially indistinguishable from a decision of [the United

5   States Supreme] Court and nevertheless arrives at a result different from [the Court's]

6   precedent." *Lockyer v. Andrade*, 583 U.S. 63, 73 (2003) (citations and internal quotation marks

7   omitted). A state court decision is an unreasonable application of clearly established law "if the

8   state court identifies the correct governing legal principle from [the United States Supreme

9   Court's] decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

10  at 75. It is not enough that the state court applies the law erroneously or incorrectly; rather, the

11  application must be objectively unreasonable. *Id.* at 75-76.

12        In order to find that a state court decision involved an unreasonable determination of the

13  facts, the reviewing court must find that the decision was "objectively unreasonable in light of

14  the evidence presented in the state court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340

15  (2003). State court factual determinations are assumed to be correct, and a petitioner bears the

16  burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1);

17  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

18        When, as here, the California Supreme Court denies a petition for review without

19  comment, the federal court will look to the last reasoned decision as the basis for the state court's

20  judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). In this case, the last reasoned

21  decision is the California Court of Appeal's May 29, 2007 decision denying habeas relief. (Ex.

22  I.) As this decision is neither contrary to, or an unreasonable application of, clearly established

23  federal law, nor based on an unreasonable interpretation of the facts, Petitioner's claim for

24  habeas relief must be denied.

25  **A.    The State Superior Court Decision Was Not Contrary to or an Unreasonable
        Interpretation of Clearly Established Federal Law.**

26

27        The first standard under AEDPA is that a state court habeas decision must not be contrary

28  to, or an unreasonable interpretation of, clearly established federal law. Here, Petitioner received

Answer to OSC; Mem. of P. & A.                                                    *Flores v. Curry*
                                                                                  C07-4846 JSW

1  all process due under *Greenholtz*, the only clearly established federal law regarding the due

2  process rights of inmates at a parole consideration hearing.  Furthermore, clearly established

3  federal law does not require that the Board's decision be supported by some evidence; however,

4  even if it did, the Board's decision is supported by some evidence per the standard set forth in

5  *Hill*.  Finally, due process does not preclude the Board from relying, in part, on the factors of the

6  commitment offense to deny parole.  As such, the state court decisions denying habeas relief

7  were not contrary to or an unreasonable interpretation of clearly established federal law, and the

8  petition must be denied.

9         **1.**       **Petitioner received all process due under the only United States Supreme
Court law addressing due process in the parole context.**

10

11        In *Greenholtz*, the United States Supreme Court established the due process protections

12  required in a state parole system.  The Court held that the only process due at a parole

13  consideration hearing is an opportunity for the inmate to present his case, and if parole is denied,

14  an explanation for the denial.  *Greenholtz*, 442 U.S. at 16.  Petitioner received both of these

15  protections in his 2006 hearing.  First, Petitioner had the opportunity to fully present his case to

16  the Board, discussing each of the relevant parole consideration addressed by the Board.  (Ex. B at

17  1-37.)  In addition, Petitioner and his attorney both gave closing statements at the conclusion of

18  the hearing, describing the reasons why Petitioner should be found suitable for parole.  (*Id.* at 39-

19  43.)  Second, when the Board reconvened after a short recess, it provided Petitioner with a

20  thorough explanation as to why he was denied parole.  (Ex. B at 44-51.)  The Board based its

21  decision on the gravity of the commitment offense, finding that it was "especially cruel," "very

22  dispassionate and calculated," and committed solely for "some economic gain."  (*Id.* at 44-45.)

23  In addition, the Board also stated its decision denying parole was based in part on Petitioner's

24  lack of written verification for his parole plans, and that the Board had considered the San Diego

25  County District Attorney's opposition to parole.  (*Id.* at 46-51.)

26        Thus, because Petitioner received an opportunity to present his case and an explanation as

27  to why the Board denied him parole—and does not claim otherwise—he received all process due

28  under *Greenholtz*, the only clearly established Supreme Court law regarding due process at

Answer to OSC; Mem. of P. & A.                                                                 *Flores v. Curry*
                                                                              C07-4846 JSW

1  parole consideration hearings. Accordingly, the state court decisions upholding the Board's

2  parole denial are not contrary to, or an unreasonable application of, clearly established federal

3  law.

4    **2.    The Ninth Circuit's some-evidence test is not clearly established Supreme Court law.**

5

6    Petitioner states that this Court must determine whether some evidence supports the

7  Board's decision to deny parole. However, the some-evidence standard is not the proper

8  standard of federal judicial review. In *Greenholtz*, the Supreme Court specifically rejected the

9  idea that a parole board must specify particular evidence in the inmate's file or at his interview to

10  support its decision, as that would transform the parole process into an adversarial proceeding

11  and equate the denial of parole to a guilty verdict. Thus, as a matter of clearly established

12  Supreme Court law, a challenge to a parole decision will fail if the inmate has received the

13  protections required under *Greenholtz*.[1]

14    The Ninth Circuit, however, has erroneously determined that clearly established federal

15  law requires that a parole decision be supported by some evidence. *Jancsek v. Oregon Board of*

16  *Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987); *McQuillion v. Duncan*, 306 F.3d 895, 904 (9th Cir.

17  2002). This standard stems from the decision in *Hill*, in which the United States Supreme Court

18  determined that some evidence must support the decision of a prison disciplinary board to revoke

19  good time credits. 472 U.S. at 455. In *Jancsek*, *McQuillion*, and subsequent cases, the Ninth

20  Circuit held that the some-evidence standard applies not only in the disciplinary context, but the

21  parole context as well. *Id.* However, because these holdings are not clearly established federal

22  law under AEDPA standards, they do not apply in federal habeas proceedings which challenge

23  parole denials.

24    In *Musladin*, the United States Supreme Court reiterated that for AEDPA purposes,

25

---

26    1. The Supreme Court has cited *Greenholtz* approvingly for the proposition that the "level of process due for inmates being considered for release on parole includes an opportunity to be heard

27  and notice of any adverse decision" and noted that *Greenholtz* remained "instructive for [its] discussion of the appropriate level of procedural safeguards." *Wilkinson v. Austin*, 545 U.S. 2384,

28  2397 (2005).

1    "clearly established federal law" refers only to the holdings of the Supreme Court on the specific

2    issue presented.  The Supreme Court's opinion in *Musladin* arose from the Ninth Circuit's

3    decision holding that under clearly established federal law, courtroom spectators who wore

4    buttons depicting the victim of a murder inherently prejudiced the murder defendant and denied

5    him a fair trial.  *Id.* at 652.  In doing so, the Ninth Circuit determined that the prejudice tests used

6    by the Supreme Court in two similar but factually distinct cases constituted clearly established

7    federal law for the purposes of AEDPA.  *Id.*  The Supreme Court, however, reversed the Ninth

8    Circuit's decision upon review, holding that the highest court had "never addressed a claim that

9    private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a

10   fair trial."  *Id.* at 653.  Hence, the *Musladin* court made it clear that circuit courts may not import

11   a federal standard used for one set of circumstances into a different set of circumstances under

12   the guise of "clearly established federal law."  *Id.*; *see also Schriro v. Landrigan*, ___U.S.___,

13   127 S. Ct. 1933, 1942 (2007) (reversing the Ninth Circuit Court of Appeal's decision regarding

14   an ineffective assistance of counsel claim on the ground that the Supreme Court had not

15   previously address the specific claim presented in this case).

16       Several recent Ninth Circuit decisions also emphasize that there can be no clearly

17   established federal law where the Supreme Court has never addressed a particular issue or

18   applied a certain test to a specific type of proceeding.  *Crater v. Galaza*, 491 F.3d 1119, 1122-23,

19   1126-27 & n.8 (9th Cir. 2007) (citing *Musladin*, the Ninth Circuit acknowledged that decisions

20   by courts other than the Supreme Court as "non-dispositive" under § 2254(d)(1)); *Foote v. Del

21   Papa*, 492 F.3d 1026, 1029-30 (9th Cir. 2007) (affirming district court's denial of petition

22   alleging ineffective assistance of appellate counsel based on an alleged conflict of interest

23   because no Supreme Court case has held that such an irreconcilable conflict violates the Sixth

24   Amendment); *Nguyen v. Garcia*, 477 F.3d 716, 718, 727 (9th Cir. 2007) (holding that state

25   court's decision finding *Wainwright v. Greenfield*, 474 U.S. 284 (1986) did not apply to a state

26   court competency hearing was not contrary to clearly established federal law because Supreme

27   Court had not held that *Wainwright* applied to competency hearings).

28       The *Jancsek* and *McQuillion* courts, however, did exactly what the *Musladin* court

Answer to OSC; Mem. of P. & A.                                      *Flores v. Curry*
                                                                    C07-4846 JSW

11

1  warned against—they took the some-evidence standard from the prison disciplinary context and

2  applied it to an entirely different situation.  Although both prison disciplinary hearings and parole

3  consideration decisions affect the duration of an inmate's confinement, the two situations are not

4  identical.  Specifically, prison disciplinary hearings involve a finding of guilt, meaning that the

5  process due in disciplinary hearings is greater than that required in parole hearings.  *Greenholtz*,

6  442 U.S. at 15-16.  Thus, the *Jancsek* and *McQuillion* courts erred in determining that the some-

7  evidence standard should apply in the parole hearing context, and subsequent courts have erred in

8  holding that this standard is clearly established federal law for the purposes of AEDPA.  *See*

9  *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007); *Sass*, 461 F.3d 1123; *Biggs*, 334 F.3d 910.

10      Any argument that due process requires a less deferential standard of review is without

11  merit.  Neither the some-evidence standard nor any more stringent standard is necessary to

12  protect Petitioner's due process rights, as three California courts have already evaluated the

13  substantive merits of his claims.  (Exs. G, I, K.)  Therefore, the absence of substantive review

14  under AEDPA does not diminish Petitioner's due process rights—it merely defers to the state

15  court's evaluation of those rights, consistent with AEDPA's stated purpose of "further[ing]

16  comity, finality, and federalism."  *Miller-El v. Cockrell,* 573 U.S. 322, 337 (2003).  Thus, neither

17  the some-evidence standard of review nor any higher standard is necessary at the federal level to

18  protect Petitioner's substantive due process rights.

19      In summary, *Greenholtz* is the only United States Supreme Court authority describing the

20  process due at a parole consideration hearing.  As such, Petitioner is entitled to only those

21  protections provided in *Greenholtz*.  Because he received these protections, the state court

22  decisions upholding his parole denial are not contrary to clearly established federal law.

23      **3.    Even if the some-evidence standard was clearly established federal**
        **law, the standard was correctly applied by the state courts.**

24

25      Even if the some-evidence standard is clearly established federal law for AEDPA

26  purposes, Petitioner's claim would nonetheless fail because the state court correctly applied the

27  standard.  The some-evidence standard "does not require examination of the entire record,

28  independent assessment of the credibility of witnesses, or weighing of the evidence;" rather, it is

Answer to OSC; Mem. of P. & A.                                                    *Flores v. Curry*
                                                                                   C07-4846 JSW

1   satisfied if there is "any evidence in the record that could support the conclusion reached by the

2   [B]oard." *Hill*, 472 U.S. at 455-57; *see also Sass*, 461 F.3d at 1129 (stating that "*Hill's* some

3   evidence standard is minimal").

4        The evidence used by the Board to deny parole was that regarding the egregious nature of

5   Petitioner's crime and his lack of verified parole plans, as well as consideration of the San Diego

6   County District Attorney's opposition to parole. (Ex. B at 44-51.) As to the crime, Petitioner

7   participated in the forcible kidnaping for ransom of an eighty-eight-year-old woman from her

8   home, which resulted in her being held captive for a number of days while she was threatened

9   with her life if the ransom was not paid. (Ex. B at 11-20, 34-37, 44-45; Ex. C at 2-9; Ex. D at 1-

10  4.) As the state court found, the circumstances of Petitioner's kidnaping offense provide "some

11  evidence to support the Board's finding that the kidnaping was cruel and continued for a number

12  of days," Petitioner "admitted he was armed in the presence of the victim," and Petitioner had

13  "threatened to harm the victim if the ransom was not paid." (Ex. I at 2.) In addition, the state

14  court properly upheld the Board's consideration of Petitioner's parole plans given that there was

15  some evidence that Petitioner currently lacked written verification of his plans. (*Id.*; *see also* Ex.

16  B at 23-27, 46-50.) As a result, the state court found that the Board's decision was supported by

17  some evidence. (Ex. I at 2.) Thus, to the extent that the some-evidence test in *Hill* is clearly

18  established federal law, it was reasonably applied by the state courts, and Petitioner's claim to the

19  contrary must be denied.

20       **4.    The Board may rely on static factors to deny parole.**

21       Petitioner also argues that due process precludes the Board from relying solely on his

22  commitment offense to deny parole after his initial parole hearing. (Pet. at 16-17.) This

23  argument fails for a number of reasons. First, the Board did not rely solely on the facts of

24  Petitioner's commitment crime to deny parole; rather, the Board also based its decision on

25  Petitioner's lack of verified parole plans and its consideration of the San Diego County District

26  Attorney's opposition to parole. (Ex. B at 44-51.) Petitioner's lack of verified parole plans is not

27  a static factor, but one which Petitioner can address in the future. Indeed, although the Board

28  declined to speculate whether presence of verified parole plans would have made Petitioner

Answer to OSC; Mem. of P. & A.                                              *Flores v. Curry*
                                                                            C07-4846 JSW

1   suitable for parole, it stated that such evidence would have been "persuasive," that Petitioner is

2   "making progress and is getting himself very close to getting out of here," and that Petitioner was

3   "at the cusp of compliance and so [he is] almost there." (*Id.* at 50.)  Second, no clearly

4   established Supreme Court law provides that the Board cannot base a parole denial on the factors

5   of an inmate's commitment offense after a certain length of incarceration.  Third, California's

6   parole provisions explicitly state that parole may be denied based on the egregious nature of the

7   crime.  For instance, California Penal Code section 3401 states that Board "shall set a release

8   date unless it determines that the gravity of the current convicted offense or offenses, or the

9   timing and gravity of current or past convicted offense or offenses, is such that consideration of

10  the public safety requires a more lengthy period of incarceration."  Similarly, California Code of

11  Regulations title 15, section 2402(c)(1), provides that a crime committed "in an especially

12  heinous, atrocious, or cruel manner" is a factor tending to indicate parole unsuitability.  Finally,

13  the California Supreme Court held in *Dannenberg* that the Board may rely solely on the

14  circumstances of the commitment offense to deny parole.  34 Cal. 4th at 1094.  Thus, under both

15  state law and clearly established federal law, the Board properly based its decision, in part, on

16  Petitioner's commitment offense.

17      Contrary to Petitioner's argument (Pet. at 16-17), the Ninth Circuit's holding in *Biggs*

18  does not compel a different result.  In *Biggs*, the Ninth Circuit stated that the Board's continuing

19  reliance on an unchanging factor to deny parole "could result in a due process violation."  *Id.* at

20  917.  However, the *Biggs* court did not definitively indicate that reliance on an unchanging factor

21  necessarily violates due process, only that it possibly could.  Indeed, the court praised Biggs for

22  being "a model inmate," and found that the record was "replete with the gains Biggs has made,"

23  including a master's degree in business administration.  *Id.* at 912.  Nonetheless, the court denied

24  habeas relief because the Board's decision to deny parole–which relied solely on the commitment

25  offense–was supported by some evidence.  *Id.* at 917.

26      Most importantly, the statement in *Biggs* is merely circuit court dicta, and not clearly

27  established federal law sufficient to overturn a state court decision under AEDPA standards.  The

28  Ninth Circuit has emphasized that *Biggs* does not contain mandatory language, and that "[u]nder

Answer to OSC; Mem. of P. & A.                                                    *Flores v. Curry*
                                                                                 C07-4846 JSW

1    AEDPA, it is not our function to speculate about how future parole hearings could proceed."

2    *Sass*, 461 F.3d at 1129. The *Sass* court then rejected the argument that the Board's reliance on

3    "immutable behavioral evidence" to deny parole violated federal due process. *Id.* Furthermore,

4    the Ninth Circuit subsequently determined that the *Biggs'* dicta regarding the possibility of a

5    future due process violation was insufficient to establish a basis for relief because "it is not our

6    function to speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129;

7    *see also Irons*, 505 F.3d at 852-54 (holding that despite "substantial" evidence of rehabilitation in

8    that case, the Board acted properly within its discretion in continuing to rely on the circumstances

9    of the inmate's offense to deny parole); *but see Hayward v. Marshall*, 512 F.3d 536, 547-48 (9th

10   Cir. 2008) [holding that denying parole based solely on the commitment offense violated due

11   process based on the factual circumstances and factors present in that case].)

12          Thus, the dicta from *Biggs* and its progeny do not prelude the Board from using

13   circumstances of the commitment offense to deny parole, nor may this dicta be used to overturn a

14   valid state court decision. Accordingly, Petitioner fails to prove that the state court decision

15   denying parole is contrary to or an unreasonable application of clearly established federal law,

16   and the petition must be denied.

17   **B.    The State Court Decision Upholding the Board's Parole Denial Was Based
             On a Reasonable Interpretation of the Facts.**

18

19          The second standard under AEDPA is that a state court habeas decision must be based on

20   a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. §

21   2254(d)(2). Petitioner bears the burden of proving that the state court's factual determinations

22   were objectively unreasonable. 28 U.S.C. § 2254(e)(1); *Juan H. v. Allen*, 408 F.3d 1262, 1270

23   (9th Cir. 2005). Thus, in order to prevail on this claim, Petitioner would need to prove that it was

24   objectively unreasonable for the state courts to conclude that the Board acted in accordance with

25   due process and that some evidence supported the factual basis of the Board's parole denial.

26   Petitioner fails to meet this burden, as some evidence in the record supports the Board's finding;

27   furthermore, he does not provide any evidence to show that the Board's determination of parole

28   unsuitability violated federal due process.

Answer to OSC; Mem. of P. & A.                                          *Flores v. Curry*
                                                                        C07-4846 JSW

1    Petitioner may disagree with the Board's analysis, but that is not sufficient to prove that

2    the state court's decision was objectively unreasonable. For instance, although Petitioner alleges

3    his action were not as culpable as that of the other kidnappers, he is equally culpable for all the

4    actions of his co-conspirators. *Cf. Biggs*, 334 F.3d at 916 (finding that some evidence supported

5    the Board's reliance on the gravity of the offense to deny Biggs parole because although Biggs

6    did not personally kill the victim, "he was intertwined with the conspiracy from the very

7    beginning"); *Machado v. Kane*, No. C 05-01632 WHA, 2006 WL 449146, at *5 (N.D. Cal. Feb.

8    22, 2006) (finding that the Board properly relied on the commitment offense to deny parole

9    because although the petitioner did not strike the victim, the petitioner armed himself with a gun,

10   planned a home-invasion robbery, and executed the plan; thus, he was equally responsible for his

11   crime partner's brutality as a reasonably foreseeable act of violence during the crime). Moreover,

12   the applicable Penal Code and regulatory provisions require the Board to consider the entire

13   circumstances of the commitment offense rather than merely the specific actions the prisoner

14   committed during that offense. Cal. Penal Code § 3041(b); Cal. Code Regs., tit. 15, § 2281. The

15   state court thus reasonably upheld the Board's decision based on its factual determinations

16   regarding both Petitioner's specific involvement in the kidnaping for ransom as well as the other

17   circumstances of this offense.

18   Lastly, in assessing the state court's review of Petitioner's claims, not only should the

19   appropriate deference be afforded under AEDPA to the state court's review, but deference is also

20   due to the underlying Board decision. The Supreme Court has recognized the difficult and

21   sensitive task faced by the Board members in evaluating the advisability of parole release.

22   *Greenholtz*, 442 U.S. at 9-10. Therefore, contrary to Petitioner's belief that he should be paroled

23   based on the evidence in support of parole presented at the hearing, the Supreme Court has stated

24   that in parole release, there is no set of facts which, if shown, mandate a decision favorable to the

25   inmate. *Greenholtz*, 442 U.S. at 9-10. Instead, under the some-evidence standard, the court's

26   inquiry is limited solely to determining whether the state court properly found that the Board's

27   decision to deny parole is supported by some evidence in the record, i.e., any evidence. *Hill*, 472

28   U.S. at 455. Here, because the state court reasonably applied the some-evidence standard to the

Answer to OSC; Mem. of P. & A.                                                    *Flores v. Curry*
                                                                                  C07-4846 JSW

16

1  Board's decision and made a reasonable determination of the facts considered by the Board,

2  Petitioner's claim for federal habeas relief must be denied.  28 U.S.C. § 2254(d)(1-2); *Andrade*,

3  583 U.S. at 75-76.

4                                    **CONCLUSION**

5        Petitioner's disagreement with the Board's decision is not sufficient to overturn three

6  valid state court decisions denying habeas relief.  Rather, in order for his claim to succeed, he

7  must prove that the state court holdings were contrary to, or an unreasonable application of,

8  clearly established federal law, or that the decisions were based on an unreasonable

9  determination of the facts.  Petitioner fails to make such a showing.  First, he received all process

10 due under *Greenholtz*, the only clearly established federal law in the parole hearing context.

11 Second, the some evidence standard does not apply to Petitioner's case; however, even if it did,

12 the state court reasonably determined that the Board's decision is supported by some evidence of

13 parole unsuitability.  Accordingly, the petition for writ of habeas corpus must be denied.

14        Dated:  March 21, 2008

15                                Respectfully submitted,

16                                EDMUND G. BROWN JR.
                                  Attorney General of the State of California

17                                DANE R. GILLETTE
                                  Chief Assistant Attorney General
18
                                  JULIE L. GARLAND
19                                Senior Assistant Attorney General

20                                ANYA M. BINSACCA
                                  Supervising Deputy Attorney General

21

22

23                                SCOTT C. MATHER
                                  Deputy Attorney General
24                                Attorneys for Respondent

25

26
   40224500.wpd
27 SF2008400443

28

   Answer to OSC; Mem. of P. & A.                              *Flores v. Curry*
                                                                C07-4846 JSW

                                        17

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Flores v. Curry**

No.:   **C07-4846 JSW**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **March 27, 2008**, I served the attached

### ANSWER TO ORDER TO SHOW CAUSE;
### MEMORANDUM OF POINTS AND AUTHORITIES

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Jose Flores, J-03392**
**Correctional Training Facility**
**P.O. Box 689**
**Soledad, CA 93960-0689**
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **March 27, 2008**, at San Francisco, California.

_____
            J. Palomino
            Declarant

_____
            Signature

40233384.wpd