# EXHIBIT D

FLORES, JOSE LUIS																		J03392

I.   **COMMITMENT FACTORS:**

    A.    <u>Life Crime</u>: Conspiracy/Kidnap/Ransom 182(a)(1)/209(a) PC, Count 1; Kidnap for Ransom, 209(a) PC Count 2; Kidnapping 207(a) PC Count 3; and Possession of Firearm (Handgun)/Felon 12021(a) PC Count 6; San Diego County Case Number CR140788 & SF77598. Victim: Maria Isordia, age: unknown. Date received by CDC: 1/5/94. Sentence: Life plus 4 years. MEPD: 8/16/02.

        1.    <u>Summary of Crime:</u> On 4/13/93, at approximately 4:50 P.M., Angelica Leticia Gonzales went to the residence of the victim, Maria Isordia, and subsequently left the residence. Moments after Ms. Gonzales left, three armed men entered the residence. One of the men put a gun to the victim's head and forced her out of the house. The men also placed a substance, which caused the victim to feel sleepy and nauseated, over her mouth. They also placed an unknown substance on the mouth of the victim's 88 year old mother and told her to keep quiet.

            Outside of the residence, witnesses observed one of the men and Ms. Gonzales dragging the victim who was screaming. The victim, Maria Isordia, was seen being forced out of the house by Ms. Gonzales and one of the men with the gun pointed to her. The victim yelled at the subjects to stop but was ignored. Before the vehicle was driven off, the victim was forced to lie in the back seat. At one point, when the victim was placed in the front seat, she tried to jump while the vehicle was still moving but was stopped by a male who was sitting in the back seat.

            For the next 8 days, the victim was moved to and from several locations in the Los Angeles area and Tijuana, Mexico. The victim told arresting officers that the substance which she had been forced to inhale had effected her nerves and stomach and thus, she was not able to eat any food for several days. She was told that she was being taken to Tijuana to sign some papers to sell a house she owned. She was kept in a very dirty, run-down hotel, where one of the kidnappers had discharged a firearm through a window.

COPY TO INMATE ON 1-23-06

FLORES, JOSE       J03392       CTF-SOLEDAD       DEC/2005

LIFE PRISONER EVALUATION REPORT                                             2
PAROLE CONSIDERATION HEARING
DECEMBER 2005 CALENDAR

On 4/13/93, after the kidnapping, the victim's son, Marcos Isordia, reported that he had received a telephone call from the kidnappers indicating they wanted $150,000.00 in ransom for his mother. The kidnappers told him that they had his mother in Mexico and that they wanted the money by the following day. The caller stated that if Mr. Isordia wanted to see his mother, he would have to provide the first $75,000.00 within 24 hours and the second $75,000.00 within 24 hours after that. Approximately 10 minutes later, Cecilio de Castro, who is Ms. Gonzales' brother, telephoned Mr. Isordia indicating that the kidnapper had telephoned him saying that they had Ms. Gonzales and her four children. Mr. C. de Castro told Mr. Isordia that these people were not playing around and to give the money they demanded. Marcos Isordia went on to tell investigating officers that he and ex-cousin-in-law Leticia Gonzales, had been involved in a stolen vehicle "rip off" of a subject known as "Manual". Mr. Isordia stated that he not only kept the money owed to Manual, but that he went to Hawaii, spending Ms. Gonzales' portion as well. During the next several days, Mr. Isordia received several telephone calls from alleged kidnappers "Manual" and "Sergio" and negotiations were attempted.

During the next several days, Marcos Isordia negotiated with the kidnappers for a safe return of the victim. Mr. Isordia told the kidnappers that he could only raise $75,000.00 in case and would take the deal only if he could see his mother at the time he gave the money. The kidnappers refused his request, telling Mr. Isordia "it's your problem."

On 4/16/93, sheriff's deputies placed an emergency tap on Mr. de Castro's home telephone. On 4/17/93, a successful tap was identified as coming from the manager's office in a Comfort Inn Hotel located in El Monte, California. Sheriff's detectives discovered that Ms. Gonzales, her four children, and a male known as Jose Flores (Infante) had checked into the hotel on 5/15/93 and had checked out on 5/17/93. The hotel manager told deputies that he did not appear as if Ms. Gonzales or children had been kidnapped.

The continuing negotiations between Manual and Mr. Isordia became more intense with Manual threatening to cut off the victim's ear or kill her if their demands were not met. They also threatened the lives of Mr. Isordia's two sisters.

On 4/19/93, Arturo Vasquez, husband of Ms. Gonzales listened to a tape recorded conversation between kidnapper Manual Marcos Isordia. After listening to the tape, Mr. Vasquez immediately identified the voice of Manual as belonging to Jose Flore (Infante). Later on, Vasquez retracted his statement. On 4/19/93, the negotiation with Mr. Isordia took turn. The

FLORES, JOSE            J03392              CTF-SOLEDAD            DEC/2005

MAR-12-2008 WED 12:15 PM CTF-LITIGATIONS          FAX NO. 831 678 5866          P. 03
Case 3:07-cv-04846-JSW    Document 3-5    Filed 03/27/2008    Page 4 of 16

LIFE PRISONER EVALUATION REPORT                                            3
PAROLE CONSIDERATION HEARING
DECEMBER 2005 CALENDAR

individual, Manual, who did all the negotiating up to this point, was no longer calling. A different individual, who said his name was Manual calling Mr. Isordia. This individual acted very angry and demanded that Mr. Isordia meet him with the money at Winchell's Donut Shop in El Monte. The first attempt to collect the money fell through when Mr. Isordia did not show up. Dimas De Castro, and Gonzales left the area and returned to de Castro's house. After the unsuccessful meeting, Mr. Isordia received several telephone calls stating that the kidnappers were not playing around and that they were going to kill the victim. On 4/19/93, Jose Flores entered the United States from Mexico. The vehicle in which he was riding was turned over to secondary inspection. A loaded, .25 mm semi-automatic handgun with the safety off and hammer cocked, was found under the front passenger seat where Mr. Flores was sitting. Mr. Flores was arrested after a computer check revealed that he had a prior felony conviction and an outstanding felony arrest.

On 4/20/93, Manual told Marcos Isordia to meet him at the Winchell's Store between 6:00 and 6:30 P.M. The caller stated that after the money was turned over, the victim would be released. Mr. Isordia agreed to meet the kidnapper. Surveillance units followed two vehicles from Mr. de Castro's residence to Winchell's Donut House. Mr. de Castro was observed exiting one of the vehicles and then entering Winchell's. Mr. de Castro was observed driving and parking the same vehicle approximately 75 yards from Winchell's. A third suspect, identified as Luis Arce, was observed parking a motorcycle next to the Winchell's exit. Arrest was effected the same time. Subsequent to the arrest a fully loaded SKS semi-automatic rifle was found hidden in the back seat of the car occupied by Mr. de Castro. In the county jail, Mr. Flores was admonished and declined to make a statement.

On 4/21/93, in the early morning hours, three of yet unidentified kidnappers entered the room in which the victim was staying and told her she could leave. The kidnappers told her to give them 5 minutes, enough time to leave the area and then she could leave. They made her promise not to identify them ever. Ms. Isordia waited 5 minutes, left her hotel room and ran to a residence where she was allowed to use the telephone. She then telephoned her family who picked her up and took her home to Imperial Beach.

On 4/21/93, at approximately 4:30 a.m., a sheriff's detective received a call from Marcos Isordia who stated that his mother was safe and in good condition.

According to the three men, Dimas, de Castro, and Arce who were arrested on 4/20/93, the kidnappings scheme was conceived because

FLORES, JOSE          J03392          CTF-SOLEDAD          DEC/2005

LIFE PRISONER EVALUATION REPORT                                                4
PAROLE CONSIDERATION HEARING
DECEMBER 2005 CALENDAR

sometime before the kidnapping, Leticia Gonzales did a "drug deal or something" with Marco Isordia. Mr. Isordia took off with Mrs. Gonzales' half of the money. One of the men stated that Jose Flores (Infante) came up with the ideal to get the money back. By the time the men were arrested, there were several involved. When they received a phone call that Flores was in Mexico, they continued the negotiations. Ms. Gonzales was arrested at her brother's de Castro, house. According to one of the men, she was in charge of the operation with Flores. [ Source document: Probation Officer's Report.]

2. <u>Prisoner's Version:</u> Flores stated at an interview at the San Diego County Jail that he had been living in East Palo Alto, California having moved there from Southern California in 1990 to "getaway from bad friends." In September 1991, he met Lecicia Gonzales who was living in Milipitis, California, and established a boyfriend/girlfriend relationship with her. She was at the time living with her four children and separated from her husband. He stated, "I always had a respectful relationship with her and we did things together with her and her children as a family." He explained that in April 1993, Lety (Lecicia) called and was very distraught and said her children were kidnapped and were going to be killed unless he helped her. She was at the time going to be killed unless he helped her. She was at that time, staying in El Monte. He claimed he flew down there to try and help her and was told that $90,000 had to be collected for ransom for her children. Flores stated he had no ideal why they called him as he had no access to that kind of money. He stated that after two days he went back home to East Palo Alto, where he tried to borrow money from friends and relatives. He stated that on the 14th he flew back to El Monte to hand over $1000.00 that he was able to borrow from various friends. He then went back home again and on a day or so later received another phone call from Lety who said she and her children and Maria Isordia had been kidnapped. Flores stated that he came back to San Diego where three men picked him up and drove him to a motel and enlisted his assistance in calling Marcos Isordia to demand money and to make threats against the victim if the money was not delivered. Flores stated that he made one phone call to Marcos of this nature and on one occasion spoke to his mother, the victim, "encouraging her" to communicate the seriousness of the situation to Marcos. He claims that he never saw Lety or the children after that until April 15. Flores stated that the three men who were only known by nicknames took him to various places told him to make phone calls to the victim or to Marcos and to stress the need for the money or "something was going to happen to the victim, the victim's family or to Lety's children". Flores stated that on 4/16 or 4/17, Marcus agreed to turn over some money and that a time and place of meeting was arranged, but Marcus failed to appear. Later, the men called Lety to complain that he did not show up. Lety stated to Flores that she managed to collect

FLORES, JOSE                  J03392                CTF-SOLEDAD              DEC/2005

MAR-12-2008 WED 12:15 PM CTF LITIGATIONS          FAX NO. 831 678 5866          P. 05
Case 3:07-cv-04846-JSW    Document 3-5    Filed 03/27/2008    Page 6 of 16

LIFE PRISONER EVALUATION REPORT                                                5
PAROLE CONSIDERATION HEARING
DECEMBER 2005 CALENDAR

$30,000.00 in a paper bag and gave the money to Flores to deliver to the kidnappers. Flores stated that on 4/19, accompanied by one of the kidnappers, he took the bag of money to a location in Tijuana where he handed it over. Flores stated that he was always accompanied by at least one of the three kidnappers. The one he knew as Manual had accompanied him to Tijuana and was in the car with him on the way back to Tijuana where they were stopped by the Border Patrol. Manual told Flores that he had a gun and that he placed the gun on the floor of the car under Flores' seat. Manual told Flores to admit ownership of the gun or bad things would happen to "los Ninos." Flores complained that after his arrest and after the proceedings began he was mistakenly identified as Manual who made threats during demand phone calls to "cut off the ears and shoot the victim". He denied all this. He stated, "the only reason I got involved in any of this was to help. I never expected to get any money. My only mistake was not telling the police as soon as I found out what was going on. I really believed the children were kidnapped. [Source document: POR]

3. <u>Aggravating/Mitigating Circumstances</u>:

   a. <u>Aggravating Factors</u>:

   * The incident involved multiple victims.
   * The victim was forcibly and violently dragged from her home at gunpoint and witness reports seeing the victim struck on the back of the head.
   * The prisoner was on probation to the court in Inyo County for felony conviction involving drug usage.

   b. <u>Mitigating Factors</u>:

   * The prisoner has minimum history of criminal behavior amounting to one other felony conviction.

B. <u>Multiple Crime(s)</u>: None.

   1. <u>Summary of Crime</u>: N/A.

   2. <u>Prisoner's Version</u>: N/A.

II. <u>PRECONVICTION FACTORS</u>:

   A. <u>Juvenile Record</u>: None noted.

FLORES, JOSE            J03392              CTF-SOLEDAD             DEC/2005

MAR-12-2008 WED 12:16 PM CTF LITIGATIONS          FAX NO. 831 678 5866          P. 06
Case 5:07-cv-04848-JSW   Document 3-5   Filed 03/27/2008   Page 7 of 16

LIFE PRISONER EVALUATION REPORT                                            6
PAROLE CONSIDERATION HEARING
DECEMBER 2005 CALENDAR

B. **Adult Convictions and Arrests:**

- 11/30/89 arrest Mammoth Lakes PD for H&S 11550 - <u>Use/Under the influence of a Controlled Substance</u>, the accusation was set aside.
- 12/30/89 arrest Bishop PD for H&S 11352- <u>Transportation/Sales of Controlled Substance</u>, H&S 11353- <u>Adult give minor Controlled Substance</u> with 270 days county jail and 5 years probation.

C. <u>Personal Factors</u>: Flores was born in Michocan, Mexico, one of seven children. The majority of his family is in the U.S.A. He has two brothers with minor criminality histories. In 1988, he came to California where he has been residing on a temporary residency card and established a residence most recently in the San Jose – East Palo Alto area. He has 4 years education in Mexico. He worked as a cook in various locations. He states that he used cocaine for two or three months in 1989 and had moved to Northern California from Southern California to get away from his friends who are encouraging him to use drugs. [Source document: POR]

III. **POSTCONVICTION FACTORS:**

A. <u>Special Programming/Accommodations</u>: None.

B. <u>Custody History</u>: Originally received at RJD Donovan Correctional Facility-Reception Center on 1/5/94 for his Initial processing. On 2/10/94, he was received at Centinela State Prison and received his Initial U.C.C. on 2/9/04. His custody was established at Close B and released to the general population. He was subsequently assigned to the academic (E.S.L.) class and received satisfied work grades per his education progress reports (CDC 128E's). He was subsequently promoted to ABE-1 and earned satisfactory grades. In addition he earned above to exceptional academic grades as an ABE 1 Peered Tutor per CDC 101s dated 9/19/95 and 10/31/95. He enrolled in the academic ABE III/GED Program on 1/9/96 and earned satisfactory grades. The prisoner transferred to Salinas Valley State Prison on 5/30/96 and received his Initial U.C.C. on 6/21/96. The prisoner was released from orientation status under Close A custody and released to the general population. He was subsequently assigned to ABE III and earned satisfactory plus grades. The prisoner's custody was reduced to Close B on 4/15/97 per I.C.C. He was received at California Men's Colony – East on 10/16/97 for level III general population housing. He received his Initial U.C.C. on 10/23/97. His custody was reduced to Medium A due to not meeting the criteria for Close Custody designation. His jobs consisted of maintenance plumbing with satisfactory to above average work grades per his work supervisor's reports. On 9/29/98, the prisoner enrolled as a student in the vocational welding program and earned satisfactory grades. The program was discontinued and he was enrolled into the academic (G.E.D.) program and passed

LIFE PRISONER EVALUATION REPORT
PAROLE CONSIDERATION HEARING
DECEMBER 2005 CALENDAR                                                                      7

the test on 9/30/99. He subsequently enrolled into the vocational machine shop on 12/28/99 and earned satisfactory grades per his education progress reports (CDC 128E dated 1/5/00). On 3/21/00, the CSR endorsed the prisoner for C.T.F. II placement. The prisoner was received at the Correctional Training Facility on 3/27/00, under Medium A Custody and has continued Level II placement at this time. The prisoner work or vocational skills consisted of yard maintenance, vocational welding, kitchen/scullery where he received satisfactory to exceptional work grades. He was enrolled into the vocational machine shop program on 4/4/02. He completed the program by earning satisfactory work grades per his work supervisor's reports dated 4/1/03. He was subsequently removed from Vocational Machine shop assignment non-adversely due to the completion of the program per U.C.C. on 7/18/03 per 128G. He was placed on the support services and textiles waiting lists. During the review period from 7/03 to 1/04 the inmate was assigned as the A.M. Cook. However, the Central File lacks the work reports to reflect the inmate's work performance. He was reassigned to the textiles department on 7/25/03, as a garment assembler and earned satisfactory work grades for the second 90th day grade period per CDC 101s dated 1/12/04. Per a Work Supervisor Report (CDC 101) dated 10/12/03, the prisoner was not graded due to the CTF North Facility lock downs and material shortage. He received a CDC 128B dated 9/26/03, for his participation in three (3) hours of video instruction and discussion of issues related to successfully re-engaging back into society. This class discussion is a part of the P.I.A. Inmate Employability Program. He received a 128 training certificate chrono dated 10/27/03, on the proper operation and safety procedures of the employee safety orientation equipment while assigned to the P.I.A. Fabric Products Factory. During the period of 1/5/04 to 1/4/05, the prisoner continued his work assignment at P.I.A. North Facility's Textiles Program and earned satisfactory grades. He was subsequently reassigned on 8/12/04 per CDC 101 dated 11/3/04 to a Patio Porter relief position and earned satisfactory work grades. On 12/1/04, he was reassigned to the A.M. Sanitation Crew (trash collection detail) and earned satisfactory work grades per his work supervisor's reports dated 12/9/04 and 2/17/05. On 3/23/05, the prisoner was transferred to CTF Central East Dorm as a non-adverse transfer and due to a prior committee action on 2/1/05. While at CTF North, he was assigned to the yard crew B side waste management crew and earned satisfactory work grades per his work supervisor's reports dated 2/17/05. On 5/10/05 to 5/26/05, he was assigned to the East Dorm Culinary. However, there are no work supervisor's reports noted in the Central File to indicate the prisoner's work performance. The prisoner was subsequently reassigned to P.I.A. Wood Furniture Factory as a Finisher. There are no work supervisor's reports in the Central File noting the prisoner's work performance during this work period. He received training on CAL OSHA Hazardous Communication Standard, "Right to Know"; back safety, air, eyes and sound equipment, material safety data sheets (Right to Know); lock out/tag out and general safety equipment per 128Bs dated 5/26/05. However, during this review period, there were no documents in the

FLORES, JOSE               J03392                CTF-SOLEDAD            DEC/2005

MAR-12-2008 WED 12:16 PM CTF LITIGATIONS          FAX NO. 831 678 5866          P. 08
Case 5:07-cv-04846-JSW     Document 3-5     Filed 03/27/2008     Page 9 of 16

LIFE PRISONER EVALUATION REPORT                                               8
PAROLE CONSIDERATION HEARING
DECEMBER 2005 CALENDAR

Central File reflecting current involvement or interest in educational upgrading experience.

C. **Therapy and Self-Help Activities:** Participated in Narcotics and Alcoholics Anonymous meetings during the second, third and fourth quarter year of 2003 per 128B's dated 7/3/03, 8/2/03, (Spanish A.A.), 10/10/03 and 11/20/03. Participation in Narcotics Anonymous during the first, second, third, and fourth year 2004 per CDC 128Bs dated 4/5/04, 4/22/04, 7/2/04, 10/04/04 and 12/30/04. Participation in Alcoholics Anonymous meetings for the firth and second quarter year 2005 per 128B dated 6/6/05.

D. **Disciplinary History:** None noted during this review period.

CDC 115's

None

CDC 128A's

04/12/99       CMC-E       Unissued property.

E. **Other:** On 12/17/03, the prisoner was seen by the Board of Prison Terms for this Subsequent Parole Consideration Hearing #1. The Board's decision was to deny parole for two years and recommend that the prisoner remain disciplinary free and participate in self help programs. The Board also recommends the prisoner to cooperate with the clinicians in the completion of a new psychological evaluation.

IV. **FUTURE PLANS:**

A. **Residence:** The prisoner states that if he is able to remain in the United States, his plans are to live with either his mother, Eva Infante, P.O. Box 8830, Mammoth Lakes, California, 95340, telephone number (760) 934-1420, or his sister Gloria Flores, P.O. Box 1783, Mammoth Lakes, California, 95340. The prisoner states that should he be given a parole date he will be deported to Mexico where he was born, and live with his family who has a house in Apatzingan-Michoacan, Mexico.

B. **Employment:** The prisoner indicates if he is able to remain in the United States, his plans are to look for employment in welding or any type of skill machinist work. If he is to be deported to Mexico his plans are to open a business of either welding or supermarket.

C. **Assessment:** The prisoner's parole plans have been reviewed and discussed. The prisoner has an active immigration hold from Mexico and most likely will be

FLORES, JOSE              J03392              CTF-SOLEDAD              DEC/2005

MAR-12-2008 WED 12:16 PM CTF LITIGATIONS		FAX NO. 831 678 5866		P. 09
Case 3:07-cv-04846-JSW    Document 3-5    Filed 03/27/2008    Page 10 of 16

LIFE PRISONER EVALUATION REPORT									9
PAROLE CONSIDERATION HEARING
DECEMBER 2005 CALENDAR

deported if paroled from prison. The prison indicates that he has family who resides in California who will provide a place of residence and who will give him support. However, during this interview process the prisoner did not submit any letters of potential job references or letters of support. The prisoner's work and vocational experiences consisted of: maintenance plumbing, vocational welding and machine shop.

V.  **USINS STATUS:** The prisoner has a valid USINS Hold, #A91729976, Mexico.

VI. **SUMMARY:**

　　A.　Prior to release the prisoner could benefit from:

　　　　1. Remain disciplinary free.
　　　　2. Participate in self help programs.

　　B.　This report is based upon an interview with the prisoner on 8/11/05, lasting approximately (1) hour and a complete review of the Central File lasting approximately (3) hours.

　　C.　The prisoner was afforded an opportunity to examine his Central File on 8/11/05, pursuant the Olson's Decision per 128B located in the general chrono section of the Central File.

　　D.　No accommodation was required per the Armstrong vs. Davis BPT Parole Proceedings Remedial Plan (ARP) for effective communication.

FLORES, JOSE				J03392				CTF-SOLEDAD				DEC/2005

LIFE PRISONER EVALUATION REPORT
PAROLE CONSIDERATION HEARING
DECEMBER 2005 CALENDAR

10

_____  10/11/05
H. Staten                         Date
Correctional Counselor I


_____  12/27/05
R. Leach                          Date
Correctional Counselor II


_____  12-28-05
R. Pope                           Date
Facility Captain


_____ CCP(A) 1/5/06
D. S. Levorse                     Date
Classification and Parole Representative


FLORES, JOSE          J03392          CTF-SOLEDAD          DEC/2005

BOARD OF PRISON TERMS　　　　　　　　　　　　　　　　　　　　　STATE OF CALIFORNIA

# LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

- [ ] DOCUMENTATION HEARING
- [x] PAROLE CONSIDERATION HEARING
- [ ] PROGRESS HEARING

INSTRUCTIONS

TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 7/03 to 1/4/04 | | | **PLACEMENT**: Remain at the Correctional Training North Facility and housed in the general population.<br>**CUSTODY**: Medium A.<br>**VOC. TRAINING**: Enrolled into vocational machine shop program on 4/4/02. He was subsequently removed from the vocational machine shop program non-adversely due to completion of the program per UCC action on 7/18/03 per 128G. He was subsequently placed on the support services and textiles waiting list.<br>**ACADEMICS**: None noted during this review period.<br>**WORK RECORD**: As indicated by the computer institutional inmate assignment roster, the prisoner's work experience consisted of cook (no work reports listed in the Central File regarding the work performance). He was reassigned to the textiles department on 7/25/03, as a garment assembler and earned satisfactory work grades for the second 90 day grade period. Per CDC 101 dated 1/12/04. Per CDC 101 dated 10/12/03 the prisoner was not graded due to CTF North's Facility lock downs and materials shortage. He received a CDC 128B dated 9/26/03 for participation in three (3) hours of video instruction and discussions of issues related to successfully re-engaging back in society. This class discussion is a part of the PIA Inmate Employability Program. He received a CDC 128B training certification chrono dated 10/27/03 on the proper operation and safety procedures of the Employee Safety Orientation Equipment while assigned to the textiles factory.<br>**GROUP ACTIVITIES**: Participated in the Narcotic and Alcoholics Anonymous meetings during the second, third and fourth quarter year of 2003 per 128Bs dated 7/3/03, 8/2/03 (Spanish A/A), 10/10/03 and 11/20/03.<br>**PSYCH. TREATMENT**: None noted during this review period.<br>**PRISON BEHAVIOR**: None during this review period.<br>**OTHER**: On 12/17/03 the prisoner was seen by the BPT for a Subsequent Parole Consideration Hearing #1. The Board's decision was to deny parole for 2 years and recommend that the prisoner remain disciplinary free and participate in self help programs. The Board recommends to the prisoner to participate with the clinicians in the completion of the new psychological evaluation. |

_[signature]_　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　DATE 10/11/05

FLORES　　　　　　　J03392　　　　　　　CTF-SOLEDAD　　　　　　　DEC/2005

BPT 1004 (REV 7/86)　　　　　　　　　　Page _1_

BOARD OF PRISON TERMS	STATE OF CALIFORNIA

CONTINUATION SHEET: LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 1/5/04 to 1/4/05 | | | **PLACEMENT**: CTF and housed in the general population.<br>**CUSTODY**: Medium A.<br>**VOC. TRAINING**: None noted during this review period.<br>**ACADEMICS**: None noted during this review period.<br>**WORK RECORD**: P.I.A. North Facility Textiles per CDC 101s dated 1/12/04 and 4/12/05. He earned satisfactory work grades. Per CDC 101 dated 7/12/04 during a (90 day) review period, the prisoner was not evaluated due to the facility being logged down. However, he was reassigned on 8/12/04 per CDC 101 dated 11/30/04 to the Patio Porter Relief Position and earned satisfactory work grades. On 12/1/04, he was reassigned to the A.M. Sanitation Crew Trash Collection Detail, and earned satisfactory work grades per his CDC 101s dated 12/9/04 and 2/17/05.<br>**GROUP ACTIVITIES**: Participated in Alcoholics Anonymous meetings during the first, second, third and fourth quarter year of 2004 per CDC 128Bs dated 4/5/04, 4/22/04, 7/2/04, 10/04/04 and 12/3/04.<br>**PSYCH. TREATMENT**: None noted during this review period.<br>**PRISON BEHAVIOR**: None noted during this review period.<br>**OTHER**: N/A. |

ORDER:
☐ BPT date advanced by ____ months.
☐ PBR date advanced by ____ months.
☐ BPT date affirmed without change.
☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:
☐ Previously imposed conditions affirmed.
☐ Add or modify
☐ Schedule for Progress Hearing on appropriate institutional calendar

FLORES	J03392	CTF-SOLEDAD	DEC/2005

BOARD OF PRISON TERMS	STATE OF CALIFORNIA

BPT 1004 (REV 7/86)	Page _2_

BOARD OF PRISON TERMS                                                              STATE OF CALIFORNIA

CONTINUATION SHEET: LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 1/5/05 to 8/17/05 (Present) | | | **PLACEMENT:** CTF II and housed in the general population. On 3/23/05, the prisoner was transferred to Central Facility East Dorm as a non-adverse transfer and due to a prior committee action dated 2/1/05.<br>**CUSTODY:** Medium A.<br>**VOC. TRAINING:** None noted during this review period.<br>**ACADEMICS:** None noted during this review period.<br>**WORK RECORD:** Assigned to the East Dorm Culinary on 5/10/05 to 5/26/05. There are no CDC 101s noted in the Central File to reflect the prisoner's work performance. The prisoner was subsequently reassigned to the PIA wood furniture factory as a finisher. There are no work supervisor reports in the Central File noting the prisoner's work performance during this work period. He received training on CAL OSHA Hazardous communication standard, "Right to Know", back safety; air, eyes and sound; material safety data sheet (Right to Know); lock out/tag out and general safety per 128Bs dated 5/26/05.<br>**GROUP ACTIVITIES:** Participated in Alcoholics Anonymous meetings for the first and second quarters of year 2005 per 128B dated 6/6/05.<br>**PSYCH. TREATMENT:** None noted during this review period.<br>**PRISON BEHAVIOR:** None noted during this review period.<br>**OTHER:** On 8/11/05, Flores was afforded the opportunity to review the central file pursuant the Olson Decision per 128B. |

ORDER:
- ☐ BPT date advanced by _____ months.
- ☐ PBR date advanced by _____ months.
- ☐ BPT date affirmed without change.
- ☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:
- ☐ Previously imposed conditions affirmed.
- ☐ Add or modify

☐ Schedule for Progress Hearing on appropriate institutional calendar

| FLORES | J03392 | CTF-SOLEDAD | DEC/2005 |

BOARD OF PRISON TERMS                                                              STATE OF CALIFORNIA

BPT 1004 (REV 7/86)                           Page _3_

BOARD OF PRISON TERMS  STATE OF CALIFORNIA

## LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐ DOCUMENTATION HEARING

☒ PAROLE CONSIDERATION HEARING   **ADDENDUM**

☐ PROGRESS HEARING

**INSTRUCTIONS**
TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2411.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 8/18/05 to 4/21/06 (Present) | | | **PLACEMENT:** CTF. **CUSTODY:** Medium A. **VOC. TRAINING:** None noted during this period. **ACADEMICS:** None noted during this period. **WORK RECORD:** Inmate Flores continued his assignment in the Prison Industry Authority Wood Products Section as a Furniture Finisher and received all satisfactory ratings. On 8/26/05 he was reassigned to the Upholstery Shop as a Sewing Machine Operator (Furniture Upholsterer) and received satisfactory ratings in all categories on his Work Supervisor's Report dated 12/1/05. **GROUP ACTIVITIES:** Flores continued his fine participation in the AA/NA Program meetings per CDC 128B laudatory chronos dated 10/12/05 and 1/13/06. **PSYCH. TREATMENT:** None noted during this period. **PRISON BEHAVIOR:** On 7/30/05 Flores received a CDC 128A (Custodial Counseling) chrono for Violating Count and Movement. **OTHER:** None. |

CORRECTIONAL COUNSELOR'S SIGNATURE   DATE 4/25/06

FLORES   J03392   CTF-SOLEDAD

BPT 1004 (REV 7/86)

LIFE PRISONER: POSTCONVICTION PROGRESS REPORT                    ADDENDUM

_____    4/25/06
S. Arno                      Date
Correctional Counselor I


_____    5-2-06
F.I. DeGuzman                Date
Correctional Counselor II (A)


_____    5-3-06
R. Pope                      Date
Facility Captain


_____    5-5-06
D.S. Levorse                 Date
Classification and Parole Representative


FLORES                J03392                CTF-SOLEDAD

BPT 1004 (REV 7/86)