# EXHIBIT G

FILED
Clerk of the Superior Court

FEB 0 6 2007

By: L. Wilder, Deputy

# THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
# IN AND FOR THE COUNTY OF SAN DIEGO

IN THE MATTER OF THE APPLICATION OF: ) HC 17790 - Third Petition
) CR 140788
JOSE FLORES, )
) ORDER DENYING PETITION FOR
) WRIT OF HABEAS CORPUS
Petitioner. )
)

AFTER REVIEWING THE PETITION FOR WRIT OF HABEAS CORPUS AND THE FILE IN THE ABOVE-REFERENCED MATTER, THE COURT FINDS AS FOLLOWS:

On November 19, 1993, a jury convicted Petitioner of conspiracy to commit kidnapping for ransom, kidnapping for ransom, kidnapping, and possession of a firearm by a felon. Allegations that he possessed and personally used a weapon in the commission of the offenses were also found to be true. He was subsequently sentenced to an indeterminate sentence of life with the possibility of parole plus a determinate term of four years. His minimum eligible parole date was August 16, 2002.

On October 18, 2004, Petitioner filed a petition for writ of habeas corpus challenging the December 17, 2003 decision of the Board of Prison Terms (Board) denying him parole. Petitioner contended the Board's decision was arbitrary and capricious and unsupported by even "some evidence." The Court requested an informal response to the petition, after which it issued an order to show cause why the relief sought should not be granted. After review of all the

documents and evidence provided, the Court denied the Petition on September 19, 2005, stating "In addition to now admitting being involved in planning the kidnapping, Petitioner admits he made several of the ransom phone calls and displayed a semi-automatic weapon at least once when he was with the victim in Mexico. Ex. 2, pp. 16 & 37 – 38. The display of the gun alone constitutes an act beyond the minimum necessary to sustain the conviction for kidnapping for ransom. ¶ The Board's determination that Petitioner is not yet suitable for parole was also based on his escalating pattern of criminal conduct. This finding was also supported by the record. ¶ Petitioner admitted that prior to the commitment offense he had been convicted of transportation and sale of cocaine. Petition, p. 7. He also admitted abusing cocaine for three years. Ex. 2, p. 26. At the time of his arrest, Petitioner also had an outstanding felony arrest warrant. Return, Ex. 3, p. 9. As this Court previously noted, kidnappings are violent offenses involving great risk of injury to its victims. As the kidnapping in this case was drug-related, the Board's assessment that Petitioner's criminal conduct was escalating at the time of the commitment offense is amply supported." (Order denying second petition, page 3:8-21)

The above quotation was inserted here because Petitioner has now filed his third habeas corpus petition, claiming that the Board of Parole Hearings (BPH) was incorrect in denying his request for a parole date for one year after the most recent hearing on June 15, 2006, because he corrected his involvement in the commitment offense in a declaration signed under penalty of perjury. However, these latest admissions essentially state the opposite of what is set forth in the quotation above.

It should also be noted that on February 2, 2006, Petitioner filed a habeas corpus petition in the local Fourth District Court of Appeal (D047956), which apparently also challenged the earlier December 17, 2003 BPH decision denying parole, which, after an informal response was filed by the People, was denied on July 14, 2006. In the Order denying that petition, the appellate court stated: "Flores' exact role in the kidnapping is disputed. There is some evidence he may have been one of the masterminds of the kidnapping (i.e., the swindled drug dealer) as well as one of the kidnappers. At a minimum, he knew about the kidnapping before it happened, he made some of the ransom demands, and he possessed a firearm in [the victim's] presence while

she was being detained." Petitioner then sought review of this appellate denial, but the California Supreme Court denied review on October 11, 2006.

This present Petition is denied for the following reasons.

Petitioner presented a declaration signed under penalty of perjury that detailed his version of his involvement in the underlying case. Essentially, he claims that he was not involved in the initial planning stages of the kidnapping and therefore he should not be denied parole because his role in the underlying case is not as serious as what the BPH previously had to review.

While this may, or may not be valid evidence, the BPH is not required to disregard a conviction determined by a jury and verified by an appellate court, simply because it has been presented at a parole suitability hearing.

It is clear that the BPH denied setting a parole date based almost entirely on the seriousness of the commitment offense. However, it is clear right on the very first page of the decision (Page 44 of the transcript at Exhibit 2 attached to the current petition) that the BPH was not really concerned with whether Petitioner had been involved in the initial kidnap plan: "[t]he panel noted that this offense was carried out in an especially cruel manner in that the victim was forced from her home, Maria Isordia. She was kidnapped. She was held for ransom in a hotel in Tijuana and then transported in and around the Los Angeles County area, eventually winding up in Tijuana. The offense was carried out in a very dispassionate and calculated manner in that the victim was removed from her home, threatened, taken to Mexico and held there for ransom for a number of days. The motive for the crime, the best we could determine, the panel came up with it was some economic gain that they hoped to gain from the kidnapping. And these conclusions were drawn from the statement of facts."

Thus, it would appear that even with Petitioner's declaration before it, the BPH still believed that Petitioner's involvement in the crime was serious enough to deny a parole date. In fact, at page 39 of the hearing transcript, Petitioner's own attorney states: "Mr. Flores has acknowledged that he participated. . . ." Counsel also admitted that "he [Petitioner] was armed in the presence of the victim on one occasion."

What is not mentioned in any of this is that the victim was 88 years old at the time of the

kidnapping. Therefore, as much as Petitioner now attempts to minimize his involvement, he clearly participated in this prolonged detention of a woman whose only apparent crime was to be the mother of someone who had attempted to swindle a large amount of drug proceeds. The BPH considered that and this Court cannot find that there was any abuse of discretion in doing so because of the law discussed below. Simply put, Petitioner has failed to meet the burden set forth here:

Every petitioner must set forth a *prima facie* statement of facts which would entitle him to habeas corpus relief under existing law. In re Bower (1985) 38 Cal.3d 865, 872. Vague or conclusory allegations do not warrant habeas relief. People v. Duvall (1995) 9 Cal.4th 464, 474. The petitioner bears the burden of proving the facts upon which he bases his claim for relief. In re Riddle (1962) 57 Cal.2d 848, 852. The petition should include copies of reasonably available documentary evidence in support of claims, including pertinent portions of hearing transcripts and affidavits or declarations. People v. Duvall, supra, 9 Cal.4th at 474. A petitioner's unsubstantiated statements do not provide a sufficient basis upon which to prove his claims. In re Alvernaz (1992) 2 Cal.4th 924, 945.)

While Petitioner has provided a full copy of the parole hearing transcript, letters, and the transcripts from previous parole suitability hearings, he still has not met this burden for the reasons detailed below. Regardless of this Court's view of the current state of the law, it still must follow the dictates of the legislature and California case law, also as discussed below.

**Overview of parole suitability standards:**

By statute, when determining suitability for parole, the parole board "shall normally set a parole release date" (Penal Code § 3041(a)) "unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of a current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual." (Penal Code § 3041(b)). The state Legislature has given the BPH the power to establish the rules and regulations regarding release on parole. (Penal Code § 3052.) The BPH regulations require a panel determining parole suitability for a life prisoner to find the prisoner unsuitable for parole if, in the judgment of the panel, the prisoner will pose an

unreasonable risk of danger to society if released from prison. (California Code of Regulations, Title 15 [hereafter 15 C.C.R.] §§ 2281(a), 2402(a).) The BPH should consider all relevant, reliable information available to it, including the prisoner's social history, past and present mental state, criminal history, commitment offenses, behavior before, during and after the crime, attitudes toward the crime, and any other information that bears on the prisoner's suitability for release on parole. (15 C.C.R. §§ 2281(b), 2402(b).)

The BPH has also set forth general factors that tend to show suitability and unsuitability for parole. (15 C.C.R. §§ 2281(c)-(d), 2402(c)-(d).) The following are the factors tending to show *unsuitability* for parole that the parole board should consider:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> (C) The victim was abused, defiled or mutilated during or after the offense.
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(15 C.C.R. § 2402(c).)

The following are the factors tending to show *suitability* for parole that the parole board should consider:

> (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
> (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.
> (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.
> (4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.
(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.
(7) Age. The prisoner's present age reduces the probability of recidivism.
(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.
(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.
(15 C.C.R. § 2402(d)).

The precise manner in which these specified factors are considered and balanced lies within the broad discretion of the BPH, but any decision to deny parole cannot be arbitrary or capricious. In re Rosenkrantz (2002) 29 Cal.4th 616, 656-657, 677 (Rosenkrantz).) Thus, the standard is that a life prisoner such as Petitioner should be granted parole unless the BPH finds, in the exercise of its broad discretion, the prisoner is unsuitable for parole in light of the circumstances specified by statute and by regulation. (See Rosenkrantz, supra, 29 Cal.4th at 654-655.) The overriding factor in determining whether a prisoner is suitable for parole is public safety. (Penal Code § 3041; 15 C.C.R. § 2402(a); In re Dannenberg (2005) 34 Cal.4th 1061, 1084 (Dannenberg); In re Scott (2005) 133 Cal.App.4th 573, 591 (Scott).)

Judicial review of the BPH's decision whether a prisoner is suitable for parole is limited to a determination of whether the factual basis for the decision is supported by some evidence in the record presented to the parole board that has some indicia of reliability. (Rosenkrantz, supra, 29 Cal.4th at 667; Scott, supra, 133 Cal.App.4th at 590-591.) This standard of review requires only a "modicum of evidence." (Rosenkrantz, supra, 29 Cal.4th at 677.) It is within the BPH's discretion to decide how to resolve conflicts in the evidence and to decide how much weight to give each factor. (Id. at 656, 677.) "It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole." (Id. at 677.) As long as the BPH's decision reflects individualized consideration of the specified criteria and legal standards, and is not arbitrary or capricious, the court's review is limited to ascertaining whether there is some evidence in the record that supports the decision.

Petitioner argues that because of his declaration correcting the record of his involvement

in the commitment offense, there was no evidence to support its decision. As detailed above, this simply does not appear to be true. There is "some evidence" to support the BPH's decision finding Petitioner unsuitable for release on parole.

Moreover, it should be **clearly noted** that the delay in setting the parole was only for one year before another hearing on the issue. The BPH was also clearly concerned that Petitioner's living arrangements and potential employment scenario were still quite vague. There is an indication that there was supposed to be documentation in his file that provided this information, but for whatever reason it was missing. It might have influenced the BPH ultimate decision, but that would be speculation by both the BPH and Petitioner. What is clear is that the BPH put the onus on the Petitioner to make sure he had his own copies of every document in his file so that same problem would not arise again.

The federal courts indeed have found the language of Penal Code § 3041 creates a liberty interest in release on parole, which is protected by the procedural safeguards of the due process clause. (Biggs v. Terhune (9th Cir. 2003) 334 F.3d 610, 614; McQuillion v. Duncan (9th Cir. 2002) 306 F.3d. 895, 902-903; see also, Rosenkrantz, supra, 29 Cal.4th at 653.) However, the California Supreme Court has recently found that whether a prisoner is suitable for parole trumps the prisoner's expectancy of a set parole date. (Dannenberg, supra, 34 Cal.4th at 1070-1071 ["The statutory scheme, viewed as a whole, thus clearly elevates a life prisoner's individual suitability for parole above the inmate's expectancy in early setting of a fixed and "uniform" parole date."]) Thus, there is no violation of a prisoner's liberty interest if the parole board properly denied parole.

A decision to deny parole can be based on the nature of the prisoner's underlying offense alone, as long as the parole board has given due consideration to all applicable factors regarding suitability for parole (Rosenkrantz, supra, 29 Cal.4th at 677, 682-683; see also, Scott, supra, 133 Cal.App.4th at 594-595), and the circumstances of the commitment offense reasonably could be considered more aggravated or more violent than the minimum necessary to sustain a conviction for that offense (Rosenkrantz, supra, at 678, 683; see also, Dannenberg, supra, 34 Cal.4th at 1098.)

The parole board in this case did not rely solely on Petitioner's commitment offense in denying him parole as discussed above. The BPH gave due consideration to all the applicable factors regarding suitability for parole as set forth in 15 C.C.R. §2402(c), (d). First, the BPH considered the underlying commitment offense, but paid attention to the fact Petitioner really did not have clear-cut living and employment plans. It also is clear that Petitioner's hope for parole has merit because at page 50 of the decision Commissioner Perez stated: "But certainly – and I want to reaffirm what Mr. [Commissioner] Garner indicated. You are certainly at the cusp of compliance and so you're almost there." Commissioner Garner had said: "But obviously by granting a year it is our impression that Mr. Flores is making progress and is getting himself very close to getting out of here."

It is clear from the decision rendered by the latest BPH panel that if Petitioner were to confirm concrete plans for his future and continue to remain discipline-free, he would greatly enhance and increase the potential for his release on parole.

Not much more needs to be said. As noted, the BPH did compliment Petitioner's record of being discipline free for so many years and that he has acquired various job skills.

After weighing the above factors, the BPH determined the positive aspects did not outweigh the unsuitability for parole, and denied parole until his next hearing, apparently set for sometime in 2007.

Thus, based on the above, there is "some evidence" in the record to support the BPH's finding that Petitioner is unsuitable for parole. This Court finds no abuse of the BPH's discretion is apparent in this case.

Therefore, for all of the reasons stated herein, the petition for writ of habeas corpus is DENIED, in its entirety.

A copy of this order shall be served on the Petitioner and the Appellate Division of the Office of the San Diego District Attorney.

IT IS SO ORDERED.

DATED: 2/6/07

GEORGE W. CLARKE
JUDGE OF THE SUPERIOR COURT

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| ☒ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101-3814<br>☐ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827<br>☐ FAMILY COURT, 1501 6TH AVE., SAN DIEGO, CA 92101-3296<br>☐ MADGE BRADLEY BLDG., 1409 4TH AVE., SAN DIEGO, CA 92101-3105<br>☐ KEARNY MESA BRANCH, 8950 CLAIREMONT MESA BLVD., SAN DIEGO, CA 92123-1187<br>☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643<br>☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941<br>☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200<br>☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649<br>☐ JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792<br>☐ JUVENILE COURT, 1701 MISSION AVE., OCEANSIDE, CA 92054-7102 | **FILED**<br>Clerk of the Superior Court<br><br>FEB 0 6 2007<br><br>By: L. SANDOVAL, Deputy |

**PLAINTIFF(S)/PETITIONER(S)**

The People of The State of California

**DEFENDANT(S)/RESPONDENT(S)**

JOSE FLORES

JUDGE: _____
DEPT: _____

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**
**(CCP 1013a(4))**

CASE NUMBER
HC 17790
CR 140788

I certify that: I am not a party to the above-entitled case; that on the date shown below, I served the following document(s):
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

on the parties shown below by placing a true copy in a separate envelope, addressed as shown below; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at:   ☒ San Diego   ☐ Vista   ☐ El Cajon
☐ Chula Vista   ☐ Oceanside   ☐ Ramona, California.

| NAME | ADDRESS |
|---|---|
| JOSE FLORES | CDC # J-03392<br>P.O. BOX 689<br>SOLEDAD, CA 93960 |
| SAN DIEGO COUNTY DISTRICT ATTORNEY'S OFFICE<br>APPELLATE DIVISION | P.O. BOX 121011<br>SAN DIEGO, CA 92112-1011 |

CLERK OF THE SUPERIOR COURT

Date: 02/06/2007                 By _____, Deputy