# EXHIBIT J

Date Filed:
SAN DIEGO DOCKETING

JUN 07 2007

No. 02005 800067
BY NORMA SANTACRUZ

# IN THE SUPREME COURT
# STATE OF CALIFORNIA

In the matter of:

JOSE LUIS FLORES,

Petition for Review.
_____/

Case No. _____

(Court of Appeal No. D050470
Fourth Appellate District;
Superior Court No. HC 17790
County of San Diego)

## PETITION FOR REVIEW

After Decision of the Court of Appeal, Fourth Appellate District

Denying the Petition for Writ of Habeas Corpus on May 29, 2007.

Jose Luis Flores, J-03392
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960

Petitioner in pro per

# IN THE SUPREME COURT

# STATE OF CALIFORNIA

In the matter of:

JOSE LUIS FLORES,

Petition for Review.

Case No. _____
(Court of Appeal No. D050470
Fourth Appellate District;
Superior Court No. HC 17790
County of San Diego)

# PETITION FOR REVIEW

TO THE HONORABLE CHIEF JUSTICE OF THE CALIFORNIA SUPREME AND
THE ASSOCIATE JUSTICES OF THE COURT:

    COMES NOW Jose Luis Flores (hereafter Petitioner) respectfully
requesting review of the decision of the Court of Appeal, Fourth
Appellate District, filed on May 29, 2007 (see EXHIBIT A).

## I

## QUESTIONS FOR REVIEW

    This case presents the following questions for review.

1. IN LIGHT OF THE UNITED STATES COURT DECISION IN HAMDI V.
   RUMSFELD (2004) 542 U.S. 507, IS IT A VIOLATION OF
   PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE
   FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
   CONSTITUTION FOR THE EXECUTIVE TO MAKE A DETERMINATION
   OF UNSUITABILITY OF PAROLE ON LESS THAN A PREPONDERANCE
   OF THE EVIDENCE STANDARD OF PROOF WHEN INDETERMINATELY
   SENTENCED PRISONERS HAVE A LIBERTY INTEREST IN PAROLE?

2. WAS IT A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS
   GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE
   UNITED STATES CONSTITUTION TO FIND HIM UNSUITABLE FOR PAROLE
   WHEN HE HAS SATISFIED THE LEGISLATIVELY PRESCRIBED
   PUNISHMENT FOR THE COMMITMENT OFFENSE AND THERE IS NO
   EVIDENCE HE IS PRESENTLY A THREAT TO PUBLIC SAFETY?

3.  WAS IT A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS
    GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE
    UNITED STATES CONSTITUTION TO FIND HIM UNSUITABLE FOR PAROLE
    BASED UPON CONDUCT OF HIS COCONSPIRATORS RATHER THAN HIS
    INDIVIDUAL OFFENSE BEHAVIOR?

## II

### NECESSITY FOR REVIEW

This Petition for Review should be granted because questions

one is a case of first impression of statewide importance in which

this Court did not have the benefit of the 2004 united states Supreme

Court decision when deciding "some evidence" is the standard of

proof for executive parole determinations in In re Rosenkrantz (2002)

29 Cal.4th 616.

Question number two needs to be answered because it too is of

a statewide importance since the recent decision by the Ninth Circuit

Court of Appeals in Irons v. Carey (9th Cir. 2007) ___ F.3d ___,

Slip Opinion (3/6/07), Docket No. 05-15275, p. 2469 has instructed

that once the minimum term is reached on an indeterminate sentence

due process may be violated if the Board of Parole Hearings (hereafter

Board) continues to reply on the commitment offense to deny parole

when there is "substantial evidence in the record demonstrating

rehabilitation." In that there are indeterminately sentenced men

and women in California's prisons well over a decade past their

statutory minimum for their offenses, the Board and inferior state

courts require guidance from this Court how Irons v. Carey is to

be applied to stop the burdensome flow of habeas petitions through

the courts.

Question three needs to be answered because the Board and state

courts, continue to deny parole, and subsequently writs of habeas

- 2 -

corpus, of a prisoner based on the collective offense behavior of
coconspirators when the offense behavior of the individual may be
minimal, thereby denying him or her the due process guarantee of
individual consideration.

## JURISDICTION OF THE COURT

This Court has sole jurisdiction to render opinions on questions
of statewide importance (Cal. Rules of Court, Rule 29 (a)(1)).

## HISTORY OF THE CASE

On November 19, 1993, Petitioner was convicted of conspiracy
to commit kidnapping for ransom, kidnapping for ransom, kidnapping
and possession of a firearm by a felon. Petitioner's minimum eligible
parole date was August 16, 2002.

At Petitioner's third parole suitability hearing on June 15,
2006, the Board read the facts of the offense into the record. These
facts are found at pages 11-20 of the parole hearing transcript
attached as EXHIBIT 2 to the habeas corpus, the facts incorporated
herein by reference. Petitioner's individual offense behavior is
documented in EXHIBIT 3, in short: On April 11, 1993, Petitioner
was living in Palto Alto, California, when he was called by Litty
Gonzales, a former girlfriend who told him she and her children were
in danger and she needed his help. She would not discuss the
situation over the phone. On April 12, 1993, Petitioner flew to
El Monte. After getting a motel room Ms. Gonzales came to the room
with a man introduced only as Manuel. Manuel told Petitioner that
Ms. Gonzales' cousin had cheated him out of $90,000 and he wanted

his money back or Ms. Gonzales and her children would be hurt.
Petitioner flew back to East Palo Alto to try to raise some money,
and on April 14, 1993, flew back to El Monte, having raised only
$1,000.  Although Mrs. Isordia, the victim of the kidnap, had been
kidnapped on April 13, 1993, Petitioner did not learn of the kidnap
until he returned to El Monte on April 14, 1993.  Moreover, although
there was some confusion if Petitioner was one of the kidnappers,
Mrs. Isordia testified that he was not, and Petitioner has receipts
that establish his timeline, being in East Palo Alto when the kidnap
took place.  Ms. Isordia testified at trial that Petitioner was kind
to her, and at one point told her she can leave if she wanted to.
Why she did not leave at that point is anyone's guess.

At sentencing, the trial judge made a finding of fact that Ms.
Gonzales was the master mind of the kidnap (EXHIBIT 8 to habeas
petition, p. 900:10-13).  The writ court was also wrong about the
age of the victim, stating she was "88 years old at the time of the
kidnap" when she was 50 years old (EXHIBIT 8, p. 887:18-20).  For
further evidence of error of facts in the writ court's decision,
please see pages 27-30 of habeas petition.

## ARGUMENTS

1. IN LIGHT OF THE UNITED STATES SUPREME COURT DECISION IN
   HAMDI V. RUMSFELD (2004) 542 U.S. 507, IS IT A VIOLATION
   OF PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE
   FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
   CONSTITUTION FOR THE EXECUTIVE TO MAKE A DETERMINATION
   OF UNSUITABILITY OF PAROLE ON LESS THAN A PREPONDERANCE
   OF THE EVIDENCE STANDARD OF PROOF WHEN INDETERMINATELY
   SENTENCED PRISONERS HAVE A LIBERTY INTEREST IN PAROLE?

The United States Supreme Court has held that the standard of

proof at the Executive level in administrative hearings, when
a prisoner has a **liberty interest** in the outcome, is a preponderance
of the evidence and judicial review is thereafter for some evidence.

Recently, the Supreme Court opined in <u>Carey v. Musladin</u> (2006)
549 U.S. ___, 2006 DJDAR 16064, 16064 (DJDAR 12/42/06), plurality
opinion, internal citations omitted:

> "Virtually every one of the Court's opinions announcing a new application of
> a constitutional principle contains some explanatory language that is intended
> to provide guidance to lawyers and judges in future cases. It is quite wrong
> to invite state court judges to discount the importance of such guidance on the
> ground that it may not have been strictly necessary as an explanation of the
> Court's specific holding in the case. 'As a general rule, the principle of <u>stare
> decisis</u> directs us to adhere not only to the holdings of our prior cases' but
> also their explanations and the governing rules of law'; 'Although technically
> dicta, . . . an important part of the Court's rationale for the result that it
> reache[s] is entitled to greater weight . . .'."

Thus, the principles and instructive language of United States Supreme
Court decisions is controlling.

In 1985, in an ambiguous decision, the United States Supreme
Court first applied the "some evidence" standard to prison
disciplinary hearings (<u>Superintendent v. Hill</u> (hereafter <u>Hill</u>) (1985)
472 U.S. 445). The High Court held that all "prison administrators"
needed for a determination of guilt was "some evidence." The
distinction in <u>Hill</u> from Petitioner is that <u>Hill</u> did not have a
liberty interest in the outcome, whereas Petitioner does have a
liberty interest in parole (<u>Sass v. Board of Prison Terms</u> (9th Cir.
2006) 461 F.3d 1123). In 1988 the California Supreme Court adopted
the "some evidence" as a standard of proof in the context of parole
rescission hearings (<u>In re Powell</u> (1988) 45 Cal.3d 894, 904 [the
due process clause is satisfied as long as there was "some basis
in fact" and "some evidence" to support the Board's findings]).
Thereafter the Board took that to mean decisions to deny parole only

need be supported by "some evidence," some evidence being the standard

of proof. In 2002 the California Supreme Court gave "some evidence"

as a standard of proof in parole suitability decisions a life of

its own by holding that all the Executive (Board or Governor) needs

to support a decision to deny parole is "some evidence" (In re

Rosenkrantz (2002) 29 Cal.4th 616, 655-661). Thus, not only was

judicial review conducted under the "some evidence" standard, but

all the Executive decision needed as a standard of proof was a mere

"some evidence."

Petitioner asks, logically: If the standard of proof is "some

evidence," and the standard of judicial review is "some evidence,"

how then does the "some evidence" standard apply itself?

Hill, supra, 472 U.S. 445, was ambiguous as to when the "some

evidence" standard applied -- at the administrative decision level,

or upon judicial review?  That ambiguity was clarified in the recent

decision of Hamdi v. Rumsfeld (2004) 542 U.S. 507, 124 S.Ct. 2633,

2651, the High Court holding that the "'[some evidence]' standard

therefore is ill suited to the situation in which a habeas petitioner

has received no prior proceedings before any tribunal and had no

prior opportunity to rebut the Executive's factual assertions before

a neutral decisionmaker."  Such applying when the prisoner has a

liberty interest (Id., at 2646).  The Executive is not a "neutral

decisionmaker" (In re Dannenberg (2005) 34 Cal.4th 1061, 1105,

dissenting opinion [the Executive has "little to gain and potentially

much to lose by granting parole, and accordingly, the incentive to

give only pro forma consideration to the parole decision is strong"]).

Hamdi v. Rumsfeld, supra, 542 U.S. 507, 124 S.Ct. 2633, is United

- 6 -

States Supreme Court precedent clearing up the ambiguity in <u>Hill</u>
that the standard of proof at the Executive level is "a preponderance
of the evidence" and judicial review is then "some evidence," thus
it is the law of the land" (<u>Yarborough v. Alvarado</u> (2004) 541 U.S.
652, 664 [AEDPA does not require that state and federal courts to
wait for nearly identical factual case before a legal rule must be
applied]); nullifying <u>In re Rosenkrantz</u>, <u>supra</u>, 29 Cal.4th 616, on
the holding of "some evidence" as a standard of proof. See Minnesota
Sister Court decision of <u>Carrillo v. Fabian</u> (2005) 704 N.W.2d 763,
777 [analyzing several federal and state court decisions in light
of <u>Hamdi v. Rumsfeld</u> concluded "that the preponderance of the evidence
standard better protects against erroneous deprivation of an inmate's
**liberty interest** in his supervised release." Simply, the "some
evidence" standard is "inadequate...as a standard of proof" (<u>Hamdi</u>
<u>**v. Rumsfeld**</u>, **supra**, 124 S.Ct., at 2651)

Moreover, although a parole suitability hearing is actually
a sentencing hearing (<u>In re Roberts</u>, 36 Cal.4th 575, 586, 587-590
(2005)), transferring the formal pronouncement of the sentence from
a court to an Executive agency, "the existence of this power does
not imply a further power in the state to immunize its acts, through
an administrative agency, from the strictures of the Fourteenth
Amendment" (<u>Sturm v. California Adult Authority</u> (9th Cir. 1967) 395
F.2d 446, 449, Browning J. concurring). In other words, a parole
hearing is not a prison disciplinary hearing, but is the second half
of what is, in reality, a bifurcated sentencing, thus the same
constitutional protections that accompany any pronouncement of
sentence in court must extend to sentencing decisions by the Board.

- 7 -

The Board being bound by United States Supreme Court precedent, Petitioner had a constitutional guarantee to have his parole suitability determined by "a preponderance of the evidence" standard of proof, not a mere "modicum of evidence," violating his right to due process.

If international terrorists who are enemy combatants of the United States are entitled to "a preponderance of the evidence" as the standard of proof at the administrative level of an Executive decision, are not state prisoners who not only have an expectation of parole but are eligible for parole, entitled to at least the same? Whether by a preponderance of the evidence or some evidence, the findings by the Board are not supported by the evidence that Petitioner is a current threat to the public.

2.  WAS IT A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION TO FIND HIM UNSUITABLE FOR PAROLE WHEN HE HAS SATISFIED THE LEGISLATIVELY PRESCRIBED PUNISHMENT FOR THE COMMITMENT OFFENSE AND THERE IS NO EVIDENCE HE IS PRESENTLY A THREAT TO PUBLIC SAFETY?

Petitioner has satisfied the legislatively prescribed punishment for his commitment offense; the commitment offense is therefore no longer reliable evidence of Petitioner's CURRENT threat to public safety. It was recently decided in the recent precedent setting case of In re Lee (2006) 143 Cal.App.4th, 49 Cal.Rptr.3d 931, 936 [petition for review denied, request for depublication denied 2/7/07]:

"The test is not whether some evidence supports the reasons the Governor cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety. (Cal. Code Regs. tit. 15, § 2402, subd. (a) [parole denied if prisoner 'will pose an unreasonable risk or danger to society if released from prison'], see e.g. In re Scott (2005) 133 Cal.App.4th, 573, 595 ['The commitment offense can negate suitability [for parole] only if

- 8 -

circumstances of the crime...rationally indicate that the offender will present an unreasonable public safety risk if released from prison'], but see In re Lowe (2005) 130 Cal.App.4th 1405 [suggested 'some evidence' applies to the factors, not dangerousness].)  Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety."  (Emphasis in original.)

The Lee court continued at 939: "Lee's crimes have little, if any, predictive value for future criminality.  Simply from the passing of time, Lee's crimes almost 20 years ago have lost much of their usefulness in foreseeing the likelihood of future offenses than if he committed them five or ten years ago. (In re Scott, [2005], 133 Cal.App.4th 573, 595 [past crime's value for predicting future crime diminishes over time]").

Most recently, the Ninth Circuit provided instructions that under California law, "that in some cases, indefinite detention based solely on the inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process" (Irons v. Carey, supra, Docket No. 05-15275, slip opinion, at p. 2482).

In other words, even in absence of exemplary rehabilitative efforts, only the most egregious life offenses can be denied parole without violating due process.  Petitioner's case is not one of those.

Petitioner was sentenced to life with the possibility of parole in seven years (Penal Code § 3046(a)(1)).  To cure the mischief of abuse of discretion and disparate punishment for similar crimes committed under similar circumstances under the indeterminate sentencing law, Penal Code § 3041 was amended on July 1, 1977, repealing the indeterminate sentencing law and implementing the Uniform Determinate Sentencing Act of 1976 (UDSA).  Penal Code § 3041(b) mandated that a release date be set one year prior to the minimum term, unless the Board determines that "the timing and gravity

- 9 -

of the current convicted offense ... is such that consideration of
the public safety requires a more lengthy period of incarceration...."
"With respect to persons sentenced to indeterminate terms, the purpose
of punishment is satisfied by the requirement of service of a minimum
term before eligibility for parole" (In re Morrall (2002) 102
Cal.App.4th 280, 292).  When penal statutes have various indeterminate
sentences of 7 years to life, 15 years to life, 20 years to life,
and 25 years to life, the minimum fixed years has to mean something,
otherwise all indeterminate sentences could simply be 1 year to life
and the Board arbitrarily decide how much punishment is enough
punishment, which is exactly the mischief    an indeterminate
sentence under the Uniform Determinate Sentencing Act was to cure.
To be found suitable years after the prescribed punishment, then
a uniform term fixed, is absolutely meaningless and nothing short
of a legal fiction, a mere illusion of proportionality and uniformity.
    While the commitment offense may "initially" justify a denial
of parole continued use of the offense when the prisoner has
demonstrated exemplary postconviction behavior may violate due process
(Biggs v. Terhune (9th Cir.2003) 334 F.3d 910, 916; Rosenkrantz v.
Marshall (C.D. Cal. 2006) 444 F.Supp.2d 1063, 1081; In re Scott II
(2005) 133 Cal.App.4th 573, 595; In re Shaputis (2005) 135 Cal.App.4th
217, 231; and the precedent setting case of In re Lee, supra, 49
Cal.Rptr.3d, at 940 ["First, the board and Governor must focus their
parole decisions on whether a prisoner continues to pose an
unreasonable risk to public safety." (and at 941) "To deny parole,
the reason must relate to a defendant's continued risk to public
safety"]).

When a prisoner, however, has satisfied the minimum statutory prescribed punishment for his or her commitment offense, as is Petitioner, then punishment for the offense has been satisfied and parole consideration must be on other factors, such as postconviction behavior. This is in complete accord with the offense not being viewed in a vacuum as though it is current, but is to be placed into perspective relative to time, "entailing primarily what a man is and what he may become rather then simply what he has done" (Greenholtz v. Inmates of Nebraska Penal Complex (1979) 442 U.S. 1, 10). See also Biggs v. Terhune, supra, 334 F.3d, at 915; Irons v. Carey (9th Cir. 2007) F.3d , slip opinion, p. 2469 (3/6/2007); Sanchez v. Kane (N.D. Cal. 2006) 444 F.Supp.2d 1049, 1062; Rosenkrantz v. Marshall, supra, 444 F.Supp.2d 1063, 1084-1086; Martin v. Marshall (N.D. Cal. 2006) 431 F.Supp.2d 1038, 1047). The distinction made by the Ninth Circuit in Irons, "[s]pecifically, in Biggs, Sass, and here, the petitioner had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. Biggs, 334 F.3d at 912; Sass, 462 F.3d at 1125" (Irons v. Carey, supra, slip opinion, p. 2481).

Petitioner has exceeded his statutory minimum by four (4) years by the date of his third parole suitability hearing. In that he has satisfied the punishment for the offense, and has an exemplary postconviction behavior and rehabilitation record, it was a violation of due process to find him unsuitable for parole.

3.  WAS IT A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION TO FIND HIM UNSUITABLE FOR PAROLE BASED UPON CONDUCT OF HIS COCONSPIRATORS RATHER THAN HIS INDIVIDUAL OFFENSE BEHAVIOR?

Petitioner "is entitled to have his application for these benefits 'duly considered' based upon an individualized consideration of all relevant factors" (In re Rosenkrantz, supra, 29 Cal.4th, at 655). The Board improperly denied parole based upon conduct of Petitioner's coconspirators rather than his individual offense behavior. Yes, it may be true that the "offense was carried out in an especially cruel and callous manner in that the victim was forced from her home...threatened, taken to Mexico and held there for ransom for a number of days." But Petitioner did not know of the kidnap, did not participate in the kidnap, and did not become a coconspirator to the kidnap until he enjoined the crime after the victim was transported to Mexico. Although Petitioner's participation became more than minimal, it certainly is not so aggravated that the thirteen years he has served is not enough punishment. If not, then how much punishment for his individual behavior, when those who actually committed the kidnap, except Ms. Gonzales, are no longer in prison.

"Any participant in a conspiracy may be equally culpable as a matter of law. The parole inquiry into the offense severity is much more factual, however, and focuses on the 'actual offense behavior' of the individual prisoner" (Roberts v. Corrothers (9th Cir. 1987) 812 F.2d 1173, 1180, see also In re Smith (2003) 109 Cal.App.4th 489).

The facts of the offense are never going to change. It is arbitrary for the Board to ignore Petitioner's individual offense behavior, putting the entire crime on him, when denying him parole, then one day when finding him suitable for parole do so based on

- 112 -

his offense behavior was not that of his coconspirators.  In this respect, the decision was arbitrary, violating Petitioner's right to due process.

C O N C L U S I O N

Based on the foregoing arguments with points and authorities, Petition for Review should be granted to answer the questions of statewide importance presented.  Especially the question of standard of proof because the "some evidence" standard of proof is simply inadequate where a person has a liberty interest in parole.

Date:  JUNE 2, 2007

Respectfully submitted,

Jose Luis Flores
Jose Luis Flores
Petitioner in pro per

Respectfully submitted,

Jose Luis Flores
Petitioner in pro per

# EXHIBIT "A"

COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

F I L E D
Stephan M. Kelly, Clerk
MAY 2 9 2007
Court of Appeal Fourth District

In re JOSE FLORES

on

Habeas Corpus.

D050470

(San Diego County
Super. Ct. No. CR140788)

THE COURT:

The petition for writ of habeas corpus has been read and considered by Presiding Justice McConnell, and Associate Justices McIntyre and O'Rourke.

A jury convicted petitioner Jose Flores of kidnapping for ransom and possession of a firearm by a felon. The trial court sentenced him to life in prison with the possibility of parole.

Flores contends the Board of Parole Hearings (Board) based its decision almost entirely on the unchanging circumstances of the commitment offense. In addition, Flores states in a declaration that he was not involved in the initial planning stages of the kidnapping and was not involved in the actual kidnapping of the victim. He claims he should not be denied parole because his role in the kidnapping is not as serious as what the Board previously believed to be true.

Further, while in prison Flores completed his GED and obtained two vocational certifications. He also has an exemplary disciplinary record and is a regular participant and leader in self-help programs. Upon parole, he expects to be deported to Mexico, where he plans to live with family until he earns enough money to start a welding business. A mental health evaluation rates Flores with having violence potential as less than the average citizen in the community.

The Board must grant parole unless it determines that public safety requires a lengthier period of incarceration for the individual because of the gravity of the offense underlying the conviction (Pen. Code § 3041, subd. (b).) "[P]arole applicants in this state have an expectation that they will be granted parole unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and by regulation." (*In re Rosenkrantz*, (2002) 29 Cal.4th 616, 653.)

"[T]he judicial branch is authorized to review the factual basis of a decision of the Board denying parole in order to ensure that the decision comports with the requirements of due process of law, but that in conducting such a review, the court may inquire only whether some evidence in the record before the Board supports the decision to deny parole, based upon the factors specified by statue and regulation." (*Id.* at p. 658.) "Only a modicum of evidence is required." (*Id.* at p. 677.) "It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole." (*Ibid.*)

At the hearing, the Board properly considered Flores's underlying commitment offense, finding it was committed in an especially cruel manner. (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1).) The victim in this case was threatened and kidnapped from her home. For about eight days, Flores and the other kidnappers held the victim for ransom at hotels in Los Angeles and Tijuana and Flores used a loaded weapon while doing so and threatened to harm the victim if the ransom was not paid. The motive of the crime was some economic gain Flores hoped to gain from the kidnapping.

The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole, so long as the Board does not fail to consider all other relevant factors. (*In re Ramirez* (2001) 94 Cal.App.4th 549, 569.) The Board must make a case-by-case ruling on parole suitability within the proportionality contemplated in section 3041, subdivision (c). (*In re Rosenkrantz, supra,* 29 Cal.4th at p. 683.)

The facts of Flores's crime are some evidence to support the Board's finding that the kidnapping was cruel and continued for a number of days. Further, Flores had admitted he was armed in the presence of the victim. The Board commended Flores for remaining discipline free for many years and acquiring various job skills. The Board, however, appeared to have concerns regarding the certainty of Flores's plans for his future, including living arrangements, employment plans and support plans. There is some evidence in the record to support the Board's finding Flores is unsuitable for parole and the California Supreme Court has determined the "some evidence" standard is the appropriate standard of review for a parole board's decision. (*In re Rosenkrantz, supra,* 29 Cal.4th at p. 683.)

The petition is denied.

McCONNELL, P. J.

Copies to: All parties

2

PROOF OF SERVICE BY MAIL

CASE NAME: FLORES v. CURREY

CASE NO. : D050470 (Fourth App. Dist.)

I, Jose Luis Flores       , hereby declare that I am a party to the above titled action and am over the age of eighteen (18), and I did serve a true copy of the following:

**PETITION FOR REVIEW**

by placing a true copy in an envelope with first class postage fully prepaid and said envelope surrendered to correctional staff at the Correctional Training Facility for delivery to the prison mail room and therefrom delivered to the local United States Post Office the next business day from which there is postal service between the place of mailing and the addressee:

Office of Attorney General          Clerk of the Court
110 W. "A" Street, #1100            California Court of Appeals
San Diego, CA 92101                 Fourth Appellate District
                                    750 "B" Street, #300
                                    San Diego, CA 92101

I declare under penalty of perjury that the foregoing is true and correct, doing so this 3rd  day of  June      , 2007, at Soledad, California.

                                    Jose Luis Flores I

ATTORNEY GENERAL
SAN DIEGO

2007 JUN -7 AM 8:58